666 So.2d 36 (1994)
Michael Shannon TAYLOR, alias
v.
STATE.
CR 92-1313.
Court of Criminal Appeals of Alabama.
July 8, 1994.
*39 Charles C. Hart, Gadsden, Bryan Stevenson and Ellen R. Finn, Montgomery, Mac *40 Downs, Gadsden (withdrew March 22, 1994), for appellant.
James H. Evans, Atty. Gen., and Tracy Daniel, Deputy Atty. Gen., for appellee.
BOWEN, Presiding Judge.
Michael Shannon Taylor, the appellant, was convicted of the capital murders of Ivan Ernest Moore and Lucille Moore of Gadsden, Alabama. The trial court accepted the unanimous recommendation of the jury and sentenced the appellant to death. The appellant raises 26 issues on this direct appeal from that conviction.

I
The appellant claims that the prosecutor struck black veniremembers in a racially discriminatory manner in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Ex parte Branch, 526 So.2d 609 (Ala.1987).
The prosecutor used three of his strikes to remove three of the five black veniremembers. Two blacks served on the appellant's jury. R. 767.
The three black veniremembers struck by the prosecution were Alford (no. 2), Brewster (no. 7), and Turner (no. 55). After defense counsel made his Batson objection,[1] the prosecutor argued that the appellant had failed to show a "pattern of discrimination," but he nevertheless stated his reasons for striking the three veniremembers. R. 766. Consequently, we review the validity of those stated reasons.
If the challenged party offers explanations for its strikes, the question whether a prima facie case of discrimination has been established becomes moot. Hernandez v. New York, 500 U.S. 352, 358-60, 111 S.Ct. 1859, 1866, 114 L.Ed.2d 395 (1991) ("[o]nce a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot"). Where the challenged party's explanations for his strikes are a part of the record, those explanations will be reviewed by the appellate courts regardless of the manner in which they came to be in the record. See, e.g., Huntley v. State, 627 So.2d 1013, 1016 (Ala. 1992); Jackson v. State, 594 So.2d 1289, 1293 (Ala.Cr.App.1991). "[W]hen the trial court calls upon the prosecutor for an explanation, without expressly finding a prima facie case, we will proceed directly to evaluate the sufficiency of the ensuing explanation." Williams v. State, 548 So.2d 501, 504 (Ala.Cr. App.1988), cert. denied, 489 U.S. 1028, 109 S.Ct. 1159, 103 L.Ed.2d 218 (1989). If any of the explanations advanced by a prosecutor are deemed to be insufficient, the defendant's conviction will be reversed, even if the defendant did not establish a prima facie case. See Jackson v. State, 594 So.2d at 1292-94.
Here, the prosecutor volunteered the following reasons for his peremptory strikes:

J. Turner: "[I]ndicated that he would not go along with the death penalty." R. 768. E. Alford: "He indicated thaton religious grounds that he did not believe in capital punishment." R. 768.

B. Brewster: "[S]aid that she was not for the death penalty and ... out of theI think, total of what, 80 that we had all total, was the only one that I noticed that all during voir dire sat up on the back row in the corner and stared out the window and did not pay much attention, if any, to much of anything anybody said. She did not indicate any interest. She gave appearances at times of being just flat out bored at being present." R. 768-69.
After hearing the reasons offered by the prosecutor, the trial judge denied the Batson challenge without comment. R. 774. The appellant argues on appeal that the reasons given by the prosecutor were mere pretexts for racial discrimination.

Veniremember Alford
On appeal, the appellant does not challenge the reason given for striking E. Alford.
*41 We find that the prosecutor's reason for striking veniremember Alford is amply supported by the record. See R. 272, 273, 280-281, 284.

Veniremember Turner
Veniremember Turner responded as following on voir dire:
"MR. HEDSGPETH [district attorney]: If Mr. Taylor, then, is convicted on any one, two or all three of these capital offenses, and if after we go through the punishment phase, we present aggravating circumstances and the defense presents any mitigating circumstances and you go and consider all of them and assign whatever weight that you think is the most important, after doing so, if you find that the aggravating circumstances in this case outweighed the mitigating, would you have a problem in recommending to this judge that this defendant be put to death by electrocution?
"MR. HEDSGPETH: Mr. Turner?
"MR. TURNER: No.
"MR. HEDGSPETH: No, you wouldn't have a problem or no, you couldn't do it?
"MR. TURNER: It would beI don't know. I would just have to hear the circumstances.
"MR. HEDGSPETH: I'm just asking you to assume that whatever you heard, if the aggravating circumstances outweighed the mitigating, would you have a problem in recommending the death penalty to this judge?
"MR. TURNER: No.
"... [other veniremembers shake head in the negative]
"MR. HART [defense counsel]: Now, even assuming what you [veniremember Thacker] said earlier, like, it's gory or gruesome or no mercy is shown; even with that on the one hand as aggravating, do you still think that there could be some cases that those other mitigating factors are there that you could vote for life without parole?
"MR. THACKER [veniremember]: They possibly could be, but I don'tYou know, I sort ofI guess thatThe mercy, you know, the type situation or whatever would weigh a lot more than probably him being a good guy or whatever or being good since that happened or confessing. Probably wouldn't outweigh it.
"MR. HART: If the facts are as I've outlined at this point in timeWell, I won't ask you that.
"MR. TURNER: I guess I'll go that way....
"MR. HART: Let me ask if the two aggravating circumstances in this case are as I've outlined, that it's an intentional killing during a robbery, there's a robbery involved, and that it's heinous, atrocious or cruel compared to other intentional killings, compared to other murders, if those are the aggravating on the one hand and if you have some mitigating circumstances such as he was almost 20 at the time, that he didn't have a significant history of criminal actions before that happened, that he gave a confession, that in the past 16 months since he's been arrested he's been quiet in jail, that he comes from a family that does love him, in considering that, could you consider both the aggravating circumstances and give weight to them and mitigating circumstances and give some weight to them in making up your mind or at this point in time do you have an opinion?
"MR. TURNER: From what I heard you say that, you know, he had done, which I think it was premeditated.
"MR. HART: The interpretation most people would put is I guess he had to think about it. Nobody knows. But he had to think about it, because I guess he brought the bar with him.
"MR. TURNER: I would say by him premeditated, he had time to think about it, but I wouldn't say that I wouldI wouldn'tfor right now I wouldn't say definite life in prison.
"MR. HART: Right now you wouldn't say one way or the other?
"MR. TURNER: No, I couldn't say.
"MR. HART: You wouldn't have an opinion?
"MR. TURNER: No. But, like, everything that I heard you say, you know, it was premeditated. But giving a sentence *42 right now, I couldn't say life or death." R. 657-50, 677-80.
Defense counsel argued that the prosecutor's reason for removing veniremember Turner was not race-neutral because "[i]f they were opposed to the death penalty at the time that we did the voir dire of the panel, he should have made a motion for cause at that time." R. 771. We reject that argument. "Although a juror's reservations about the death penalty may not be sufficient for a challenge for cause, his view may constitute a reasonable explanation for the exercise of a peremptory strike. See Fisher v. State, 587 So.2d 1027 (Ala.Crim.App.), cert. denied, 587 So.2d 1039 (Ala.1991)[, cert. denied, 503 U.S. 941, 112 S.Ct. 1486, 117 L.Ed.2d 628 (1992)]." Johnson v. State, 620 So.2d 679, 696 (Ala.Cr.App.1992), reversed on other grounds, 620 So.2d 709 (Ala.1993), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied,___ U.S. ___, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993).
However, having only a printed record of the voir dire to review leaves much to be desired. Viewing Turner's responses in the light most favorable to the State, we cannot state that those responses affirmatively support the prosecutor's reason, i.e., that this veniremember "indicated that he would not go along with the death penalty." R. 768. However, it does appear that at least at one point the prosecutor expressed some concern about Turner's willingness to impose the death penalty.
In explaining his reasons for his peremptory strikes under oath, the prosecutor stated, "Since I've been the district attorney there has never been any pattern of showing any attempt by the State of Alabama to discriminate [against] anyone on the basis of race." R. 771. The prosecutor listed nine white veniremembers he had struck because they "indicated a reluctance toward the imposition of the death penalty." R. 769-771.
Even if we assume that the prosecutor was wrong in his assessment of veniremember Turner's attitude toward the death penalty, we would not be convinced that his reason for striking Turner was a sham or a pretext. "`A prosecutor may strike from mistake, as long as the assumptions involved are based on an honest belief and are racially neutral.'" Reese v. City of Dothan, 642 So.2d 511 (Ala. Cr.App.1993).
"The relevant inquiry in a case of discrimination is whether the prosecutor intended to so discriminate. "We appreciate that it is impossible to know what is in the mind of another person, and that it is possible that, in stating his reasons for striking a black member of the venire, a prosecutor may give a reason that is not the true reason, but we are convinced that the trial judges in our system are in a much better position than appellate judges to decide whether the truth has been stated.' Scales v. State, 539 So.2d 1074, 1075 (Ala.1988). In the present case, the prosecutor said that based on his notes, he struck the juror based on his age. The discovery thereafter that he was wrong about the juror's age would not make that reason a fabrication or a sham. The trial court was in a better position to determine whether the prosecutor's statement was true. We do not find that the trial court's decision to overrule the defendant's objection on the stated ground is clearly erroneous."
Joyce v. State, 605 So.2d 1243, 1245-46 (Ala. Cr.App.1992).
Considering the circumstances presented, including the fact that this prosecutor does not have a history of Batson violations, we find that the trial court did not error in denying the appellant's Batson motion as to Veniremember Turner.

Veniremember Brewster
The prosecutor struck veniremember Brewster because, according to the prosecutor, she
"said that she was not for the death penalty and ... out of theI think, total of what, 80, that we had all total, was the only one that I noticed that all during voir dire sat up on the back row in the corner and stared out the window and did not pay much attention, if any, to much of anything anybody said. She did not indicate any interest. She gave appearances at times *43 of being just flat out bored at being present."
R. 768-69.
On voir dire, veniremember Brewster stated:
"I feel the same way [and would not automatically vote for the death penalty]. I can't necessarily say that I'm all for the death penalty, but being on the jury and that's what the circumstances called for and the evidence and, yes, I could come back with a verdict for the death penalty. But I wouldn't necessarily say that, you know, I'm just all out for the death penalty."
R. 280.
The prosecutor had also made the following notation: "Not for the death penalty but says she would follow the law." R. 773
Brewster's response can be interpreted as indicating some reluctance to impose the death penalty. To that extent, this response does validate the prosecutor's reason for striking Brewster.
Striking a veniremember on the basis of his or her "demeanor" is not favored. See Avery v. State, 545 So.2d 123, 127 (Ala.Cr. App.1988). Such an explanation "presents considerable difficulty to the trial courts as well as to the reviewing authorities in determining its truthfulness" and "should be closely scrutinized by both the trial and appellate courts." Id. Similarly disfavored is the "body language" explanation, which is also "especially subject to abuse because of [its] insusceptibility to an objective evaluation by the trial judge." Ex parte Bird, 594 So.2d at 685.
"Determining who is and is not attentive requires subjective judgments that are particularly susceptible to the kind of abuse prohibited by Batson. There is the additional problem that judging attentiveness requires observations of demeanor that will often not be reflected by the written record. This difficulty is compounded by the need to compare the attentiveness of the challenged venire members with those who were not challenged."
United States v. Sherrills, 929 F.2d 393, 395 (8th Cir.1991).
In contrast, more specific concerns regarding a veniremember's appearance may be deemed sufficient. For example, the fact that a veniremember "appear[ed] to be asleep or inattentive" during voir dire has been held to be an acceptable reason for a strike. Kelley v. State, 602 So.2d 473, 476 (Ala.Cr.App.1992); Smith v. State, 531 So.2d 1245, 1248 (Ala.Cr.App.1987).
In connection with Brewster, the district attorney stated that his "notes" contained the statement "looks out the window," which he had "underlined in red." R. 773. We find that the prosecutor's reasons for striking venireperson Brewsterher reluctance to impose the death penalty and her inattentivenessconstituted valid race-neutral reasons.
"Although [the defendant] argues that the reasons the district attorney gave for his peremptory strikes of three venirepersons are suspect, we note that `the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.' Batson, supra, 476 U.S. at 97, 106 S.Ct. at 1723. It is within the sound discretion of the trial court to determine if the State's peremptory challenges of black jurors are motivated by intentional racial discrimination. Ex parte Jackson, 516 So.2d 768 (Ala.1986). Moreover, the trial court's findings as to whether the defendant has established purposeful racial discrimination are to be accorded great deference on appeal, Batson, supra, 476 U.S. at 98, 106 S.Ct. at 1724, and should be reversed on appeal only if they are clearly erroneous. Ex parte Branch, 526 So.2d 609 (Ala.1987)."
Ex parte Lynn, 543 So.2d 709, 712 (Ala.1988), cert. denied, 493 U.S. 945, 110 S.Ct. 351, 107 L.Ed.2d 338 (1989).
Considering the totality of the circumstances presented here, we find no violation of Batson and Branch.[2] Apparently there *44 were 62 members on the strike list, five (8%) of whom were black. R. 761. The state used three peremptory strikes against blacks. Two blacks (16%) served on the jury.
In Ex parte Thomas, 659 So.2d 3 (Ala. 1994), the Alabama Supreme Court "disapprove[d] the statement in Harrell II [Harrell v. State, 571 So.2d 1270, 1271 (Ala.1990)] indicating that `[w]hen the evidence shows only that blacks were struck and that a greater percentage of blacks sat on the jury than sat on the lawfully established venire, an inference of discrimination has not been created.'" In this case, there is no indication that the circuit court relied upon the disapproved dicta in Harrell II in denying the appellant's Batson motion. "A circuit court's ruling on a Batson objection is entitled to great deference, and we will reverse a circuit court's Batson findings only if they are clearly erroneous. Branch, 526 So.2d at 625-26." Ex parte Thomas.
Applying the `clearly erroneous' standard to the reasons given by the State in this case, we hold that the trial court did not clearly err in denying the appellant's Batson motion.
"So long as there is a legitimate nonracial reason for the challenged strike, the Batson principles are not violated." Zanders v. Alfa Mutual Insurance Co., 628 So.2d 360, 361 (Ala.1993).
"`"Failure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case; likewise, explanation of most of the strikes on nonracial grounds does not necessarily rebut the inference created by Batson that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.'" United States v. David, 803 F.2d 1567, 1571 (11th Cir.1986).' Currin v. State], 535 So.2d [221] at 223 [(Ala.Cr.App.1988)]."
Warner v. State, 594 So.2d 664, 672 (Ala.Cr. App.1990), reversed on other grounds, Ex parte Bird, 594 So.2d 676 (Ala.1991). See also Bui v. State, 627 So.2d 855, 859 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2970, 125 L.Ed.2d 669 (1993).

II
The appellant asserts that the trial court erred in not granting his challenges for cause as to three veniremembers who, he argues, expressed a fixed opinion that death was the appropriate punishment in this case. Those veniremembers were Maise, Lasseter, and Nance.
On voir dire, Maise initially indicated that if he had to enter a verdict "now," he did not "think that [the appellant's] age nor his background would have any bearing on the fact that I think he's guilty and worthy of the death penalty." R. 492. On examination by the prosecutor, the following occurred:
"MR. HEDGSPETH: Mr. Maise, would you look at it, even if you gave it no weight?
"MR. MAISE: His age?
"MR. HEDGSPETH: Yes.
"MR. MAISE: It's already been revealed and I've already considered it.
"MR. HEDGSPETH: Well, I'm talking about, though, once the judge charges you as to the law. You may not give it any weight at all, because y'all have got to decide how much weight you give it. I'm not telling you to give it great weight or no weight. I'm just asking, will you consider it.
"MR. MAISE: Yes."
R. 496-97.
In denying the appellant's challenge for cause to veniremember Maise, the trial judge considered "[Maise's] overall testimony ... his overall answers in regard to the death penalty." R. 506-07.
Veniremember Lasseter initially responded that "[f]rom what I've heard so far, well, I would still go with the death penalty. I mean, age, good family or not." R. 492. On further examination the following occurred:

*45 "MR. HEDGSPETH: You, Mr. Lasseter, would you consider it [age and any prior criminal history or lack of it], even if you gave it no weight at all?
"MR. C. LASSETER: No weight at all?
"MR. HEDGSPETH: You might decide, yeah, I'll consider it but I'm not going to count it for anything.' All I want to know is will you consider it?
"MR. C. LASSETER: I would consider it."
R. 496
"MR. HART [defense counsel]: ... When Mr. Hedgspeth said on his turn if you would consider it even though you gave it no weight at all, what was your answer? Who did he talk to
"MR. C. LASSETER: Me. I said I would consider it.
"MR. HART: Was the question to you even though you gave it no weight at all and you said, yes, I'd consider it, is that the question he asked you?
"MR. C. LASSETER: He asked me would I consider it, whether I give it any weight at all.
"MR. HART: What did you mean by the answer?
"MR. C. LASSETER: That I would consider it."
R. 498.
"MR. HART: Mr. Lasseter, would that change what you told me earlier, that you still believe that Michael Taylor would deserve the death penalty?
"MR. C. LASSETER: Considering the weight?
"MR. HART: Considering the age. Considering the age, would that change your opinion that even considering the age you would vote ratheryou know, that you would vote for the death penalty? Your individual vote.
"MR. C. LASSETER: I would probably still vote for the death penalty."
R. 499.
"MR. HART: Let me askI guess, let me ask Mr. Christopher Lasseter, if you would ever consider voting for life without parole in any capital case?
"MR. C. LASSETER: Depending on the circumstances. I mean, IThat's like asking if it's going to rain tomorrow. I don't know. I can't tell you that without knowing some kind of an evidence or background or something about what's going to happen." R. 500-01.
The trial judge denied the appellant's challenge for cause to veniremember Lasseter without comment. R. 510.
Venireperson Nance responded as follows:
"MR. DOWNS [defense counsel]: ... Mr. Nance, I'm going to ask you the same question. Could you even consider the mitigation evidence or the lack of prior criminal history, the age, the good family, no prior acts of violence? Could you even consider those as mitigation or is you[r] mind just ma[d]e up that the death is the only solution?
"MR. NANCE: No, sir. My mind is not made up until I hear all the testimony that's to be presented to us, but
"MR. DOWNS: I'm asking you for the purposes of these questions, now, that that's all the evidence there's going to be. I want you to assume that he's guilty beyond any doubt at all.
"MR. NANCE: If it's a hundred percent?
"MR. DOWNS: It's a thousand percent.
"MR. NANCE: It's a thousand percent that he's guilty?
"MR. DOWNS: I'm telling you that as his lawyer, he is.
"MR. NANCE: I don't see to put him in jail and keep him the rest of his life.
"MR. DOWNS: What you're saying is that your only vote could beyour only recommendation to the judge would be death?
"MR. NANCE: Be death.

*46 "MR. DOWNS: And you feel like you just could not consider his age? In other words, the factors of his age and lack of prior criminal activity and the good family, you just couldn't put any weight on those?
"MR. NANCE: No, sir, I couldn't.
"MR. DOWNS: Okay. Well, again, I That's what we're trying to do, is find out if you
"MR. NANCE: I say, best of his interest, if he was put to death at his age, put in prison for the rest of his life, because there's no life in prison. So, for benefit of the taxpayers and his, I'd say death."
R. 577-79.
"MR. HEDGSPETH: ... Only thing I'm asking is if the Court tells you that the law requires that you consider those mitigating factors, will you at least just look at them, regardless of how much weight you give them? Would you look at them?
". . . .
"Now, Mr. Nance, will you consider it?
"MR. NANCE: Yes, sir, I'll consider it and weigh it out. But like I said
"MR. HEDGSPETH: I'm not going to ask you how much weight you give it.
"The only thing I'm asking, if the judge charges you that if that evidence is presented, you've got to consider it. Now, you might give it a lot of weight, you might give it a little weight, you might give it no weight, but at least you look at it and consider it?
"MR. NANCE: Yes, sir."
R. 586-88.
"MR. DOWNS: I guess, Mr. Nance, the same thing again. The judge is going to tell you about mitigating and aggravating, but if in your mind you've already said to yourself, `Hey, I don't care what he says, those things don't mean anything to me, I'm not going to give them any weight. I'm not even going to consider them.' If that
"MR. NANCE: You said when you was up at the stand before that he's a thousand percent guilty.
"MR. DOWNS: Yes, sir, he is. We're talking about what we're going to do with him. In other words, we've got him convicted
"MR. NANCE: I have done weighed it out, because you said he was a thousand percent guilty. I have done weighed it out. I have done thought about it.
"MR. DOWNS: Okay.
"MR. NANCE: And I said death penalty.
"MR. DOWNS: Well, is that still your answer? When Mr. Hedgspeth was up there you seemed to say to him, well, I'll consider this other stuff
"MR. NANCE: I have considered it when you said he was a thousand percent guilty.
"MR. DOWNS: So, you're saying you have considered it and your answer now is death is the only alternative for you?
"MR. NANCE: I'd say yes."
R. 592-93. In denying the appellant's challenge for cause as to veniremember Nance, the trial judge stated: "I don't think he ever got into the two-phase aspect of it at the end. That was my problem with him." R. 604.
"A prospective juror may not be excluded from a capital case for personal opposition to the death penalty unless the juror's beliefs would `"prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."` Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (footnote omitted). On the other hand, `[a] venire member who believes that the death penalty should automatically be imposed in every capital case should be excused.' Martin v. State, 548 So.2d 488, 491 (Ala.Cr.App.1988), affirmed, 548 So.2d 496 (Ala.), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). Accord, Bracewell v. State, 506 So.2d 354, 358 (Ala.Cr.App.1986)."
Kuenzel v. State, 577 So.2d 474, 484-85 (Ala. Cr.App.1990), affirmed, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).

*47 "The proper standard for determining whether a prospective juror may be excluded for cause because of his or her views on capital punishment is `whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath."` Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); Gray v. Mississippi 481 U.S. 648 [at 657-58], 107 S.Ct. 2045, 2051, 95 L.Ed.2d 622 (1987). `The crucial inquiry is whether the venireman could follow the court's instructions and obey his oath, notwithstanding his views on capital punishment.' Dutton v. Brown, 812 F.2d 593, 595 (10th Cir.), cert. denied, Dutton v. Maynard, 484 U.S. 836, 108 S.Ct. 116, 98 L.Ed.2d 74 (1987). A juror's bias need not be proved with `unmistakable clarity' because `juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism.' Id.
"A trial judge's finding on whether or not a particular juror is biased `is based upon determinations of demeanor and credibility that are peculiarly within a trial judge's province.' Witt, 469 U.S. at 429, 105 S.Ct. at 855. That finding must be accorded proper deference on appeal. Id. `A trial court's rulings on challenges for cause based on bias [are] entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion.' Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, Ex parte Nobis, 401 So.2d 204 (Ala.1981)."
Martin v. State, 548 So.2d 488, 490-91 (Ala. Cr.App.1988), affirmed, 548 So.2d 496 (Ala. 1989), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989). "[A] blanket declaration of support of or opposition to the death penalty is not necessary for a trial judge to disqualify a juror." Ex parte Whisenhant, 555 So.2d 235, 241 (Ala.1989), cert. denied, 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990).
Our review of the record convinces us that veniremembers Maise, Lasseter, and Nance would not automatically impose the death penalty in every capital case, and that their indication that they would impose it in this particular case was based upon the facts provided by defense counsel on voir dire. In effect, these veniremembers were stating that they would consider any mitigating factors but based upon the facts provided by counsel on voir dire examination they would recommend death if they had to make a decision at that time. For this reason, we find no error in the trial court's failure to grant the appellant's challenge for cause as to each of these three veniremembers.

III
The appellant contends that his sentence of death must be vacated because of the prosecutor's repeated comments allegedly minimizing the jury's responsibility in determining sentence.
"Under Caldwell v. Mississippi 472 U.S. 320, 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231 (1985), `it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.' However, the comments of the prosecutor and the instructions of the trial court accurately informing a jury of the extent of its sentencing authority and that its sentence verdict was `advisory' and a `recommendation' and that the trial court would make the final decision as to sentence does not violate Caldwell. `[C]omments which accurately explain the respective functions of the Judge and jury are permissible under Caldwell "as long as the significance of [the jury's] recommendation is adequately stressed."` Harich v. Wainwright, 813 F.2d 1082, 1101 (11th Cir.1987). Here, neither the prosecutor nor the trial court misrepresented the effect of the jury's sentencing recommendation. The cases of Caldwell, supra; Mann v. Dugger, 817 F.2d 1471 (11th Cir.), vacated, 828 F.2d 1498 (1987); Adams v. Wainwright, 804 F.2d 1526 (11th Cir.1986), modified, Adams v. Dugger, 816 F.2d 1493 (11th Cir.1987); and Harich, supra, each involved a situation where the prosecutor and the trial court misled the jury as to its critical role in sentencing under state law. In Hooks v. State, 534 So.2d 329 (Ala.Cr. *48 App.1987), this Court reviewed the decisions of other jurisdictions which have confronted this issue and concluded: `The trial judge's and the prosecutor's remarks clearly defined the jury's role in the sentencing scheme. Thus, the jury could not have been confused as to its responsibility in the sentencing process. The remarks made here were a correct statement of the law and did not tend to mislead or misinform the jury. Therefore, we conclude the remarks were not improper under Caldwell, supra.'"
Martin v. State, 548 So.2d at 494.
During voir dire of the jury venire, the prosecutor made the following comments:
"I keep saying recommendation, because the ultimate decision in a capital casea capital verdict is returned and a recommendationand punishment phase is brought back to the judge, the jury sits then only in an advisory capacity. The ultimate decision is to the court. But that advisory opinion must be given weight."
R. 272.
"I keep saying recommendation, recommendation. You don't decide. The jury, in the punishment phase, sits as an advisory jury and the decision that you make is an advisory opinion to the court, because Judge Rhea will ultimately be the one who decides the punishment in conjunction with all the evidence that he's heard, the aggravating and mitigating circumstances he would find, as well as the recommendation of the jury.
"So, the jury just makes a recommendation. The ultimate decision is the judge's."
R. 332-33.
"And it's a recommendation only. You don't set the sentence. You just give the judge your opinion. He decides the punishment. He's got to consider the evidence, aggravating and mitigating circumstances also, your recommendation to him, a pre-sentence report and other matters."
R. 397-98.
"Again, I keep talking about recommendation. That's all it is, because in the punishment phase of a capital case a jury sits in an advisory capacity. And whatever decision you make is an advisory verdict to the judge, because the ultimate decision of punishment in a capital case under the laws of the State of Alabama is made by the judge, but it's made in consideration with a recommendation that you make."
R. 463-64.
"I keep talking about recommendation, and the reason for that, the jury in a capital case does not decide the punishment in the punishment phase. The jury sits in an advisory capacity. What you're doing by the verdict that you would bring back in the punishment phase, you're giving the judge your advice as to what you feel like would be appropriate under the circumstances. The ultimate decision is the judge's, and he'll have to weigh all the evidence, just like you did."
R. 552.
"Alabama law requires that the jury go through a balancing test in order to determine what their recommendation to the judge is going to be, and it is a recommendation, that's all." R. 653.
There was no objection to any of these comments.
The prosecutor's opening remarks at the penalty phase of the trial began with the following:
"Again, let me, please, make sure you understand it's a recommendation. Don't want anybody getting up here giving you the idea that you're sending somebody to their death, that you're killing anybody. You're not. Don't let anybody try to put a guilt trip on you or anything like that.

*49 "The function of the jury in this particular phase of the trial is to listen to the evidence, go through then the weighing of aggravating and mitigating circumstances as the evidence proves those to you and then provide some assistance to the judge by means of what is known as an advisory verdict.
"The ultimate decision that's got to be made in this case is Judge Rhea's. You're kind of sitting here now as his council of advisers. By the verdict that you will return at the conclusion of this phase of the trial, based on the verdict that you would bring back to him in accordance with the law and the evidence as you hear it, then he will take your advice under consideration in ultimately making the decision that has to be made.

"So, please, don't personally feel like that you're making a decision on someone's life, that the decision is strictly yours or allow somebody to put some kind of guilt trip on you that you're doing something. You're sitting here merely as an adviser to the Court. The decision ultimately is the judge's." R. 1181 (emphasis added).
There was no objection by defense counsel.
In his brief opening argument to the jury at the penalty phase of the trial, defense counsel stated:
"But even though your recommendation, like everyone has told you, is advisory, the law does state that the trial court shall consider the recommendation of the jury contained in its advisory verdict. So, the law itself says that that judge shall consider your recommendation." R. 1188.
Only after all the evidence and testimony had been received at the sentence phase of the trial did defense counsel object to these remarks. R. 1324-26. "[A]lthough this [failure to object] does not preclude our review under the doctrine of plain error, it does weigh against ... any claim of prejudice." Johnson v. State, 620 So.2d 679, 700 (Ala.Cr. App.1992), reversed on other grounds, 620 So.2d 709 (Ala.), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied, ___ U.S. ___, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993). See also Ex parte Kennedy, 472 So.2d 1106, 1111 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985) (emphasis in Kennedy). 
At the time of his objection, defense counsel sought an order from the trial court preventing the prosecutor from "reminding [the jury] over and over again `Your verdict is advisory and your recommendation is advisory and you are not the final sentencing authority.'" R. 1326. Defense counsel stated:
"And I just feel like that from this time forward any charge to the jury about their vote and what it means would be up to your honor to do rather than to be allowed for us to raise in the closing argument, and we would object to the D.A. trying to raise that in closing argument from this time forward." R. 1327.
The trial court denied the appellant's motion. R. 1329.
In its opening instructions to the jury at the penalty phase of the trial, the trial court informed the jury that it had two choices, death or life imprisonment without parole, and "reminded" the jury that their verdict was only a recommendation:
"But I'll remind you again that it is a recommendation. The final decision in that regard would rest with me. But it is a function and it is specifically set out in our law that the jury is to make such a recommendation to the court of one of these two penalties." R. 1179.
In its closing instructions, the trial court repeatedly referred to the nature of the jury's sentence verdict as a "recommendation." R. 1381 ("recommended sentence"); R. 1382 ("[i]n making your recommendation concerning what the punishment should be"); R. 1383 ("in recommending punishment"); R. 1383 ("the jury must recommend the defendant's punishment"); R. 1391 ("[i]n order to bring back a verdict recommending a sentence); R. 1391 ("in order for a verdict to be returned recommending imprisonment"); R. 1391, 1392 ("recommend"); R. 1392 ("recommendation"). The forms of the different verdicts submitted to the jury were phrased in terms of "we, the jury, recommend." R. 1393-95.
*50 The prosecutor did not comment on this matter in his closing argument to the jury at the sentence stage of the trial. However, he did comment on the importance of the jury's decision:
"May it please the court, Mac, Charlie [defense counsel], ladies and gentlemen, we've come to that particular point now in the second phase of this trial, you're getting ready to go make a very important decision. It's an important decision that is going to affect the folks in this county. It's going to affect Mr. and Mrs. Moore's family. Going to affect the defendant's family. It's not an easy task that you're fixing to have to undertake.
"I don't envy you at all and I sure wouldn't want to swap places with any of you."
R. 1338.
In his argument to the jury at the sentence stage, defense counsel commented that "it's an individual vote as to whether he should be locked up forever on life without parole, without ever getting out, or whether he should die, automatically and finally in the electric chair." R. 1364. Co-counsel argued that "[i]f you kill Michael you'll kill two people. You'll kill Michael and you'll kill his mother. I submit to you that you should not, you should not in this case recommend the death penalty in this case." R. 1371.
In the beginning of his rebuttal closing argument, the prosecutor stated:
"Ladies and gentlemen, you're not going to kill anybody. Nobody is asking you to do that. Nobody is walking up and saying, `Here's the switch, pull it.' Nothing like that.
"What you're being asked to do is sit here in an advisory capacity and based on your many years of combined experience, your lives, your experiences, you're asked to sit here and to weigh things in the balance, the evidence as you've heard it, and to make a recommendation to Judge Rhea of what you feel like is an appropriate sentence.
"The judge himself is going to have to sit down and weigh this evidence just as you've already had to do in the trial, in the guilt phase, and just as you'll go back and weigh it again now. He's going to have to determine the aggravating and mitigating circumstances that he finds and he's going to have to go through the same weighing process. He's going to have to take all of that into consideration with a pre-sentence report that will be done by another agency. And with your guidance and your counsel that you're going to give him by the advisory verdict that you bringAnd it's important.
"It's very important, because it will give this judge some guidance and some assistance in what is appropriate for this type of offense, especially when it comes from law-abiding citizens such as you. It carries some weight and it does matter."
R. 1371-72.
There was no objection to any of these comments.
We condemn the prosecutor's comment during his opening remarks at the penalty phase that the jury should not "personally feel like that [they are] making a decision on someone's life" because that particular comment tends to encourage irresponsibility on the part of the jury in reaching its sentencing recommendation. However, the condemnation in Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), is that "it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." 472 U.S. at 328-29, 105 S.Ct. at 2639. We fully support that principle, yet under Alabama law, the trial judgenot the juryis the "sentencer." "[W]e reaffirm the principle that, in Alabama, the `judge, and not the jury, is the final sentencing authority in criminal proceedings.' Ex parte Hays, 518 So.2d 768, 774 (Ala.1986); Beck v. State, 396 So.2d [645] at 659 [(Ala.1980)]; Jacobs v. State, 361 So.2d 640, 644 (Ala.1978), cert. denied, 439 U.S. 1122, 99 S.Ct. 1034, 59 L.Ed.2d 83 (1979)." Ex parte Giles, 632 So.2d 577, 583 (Ala.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994). "The jury's verdict whether to sentence a defendant *51 to death or to life without parole is advisory only." Bush v. State, 431 So.2d 555, 559 (Ala.Crim.App.1982), aff'd, 431 So.2d 563 (Ala.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). See also Sockwell v. State, [Ms. CR 89-225, December 30, 1993] ___ So.2d ___(Ala.Cr.App.1993).[3] "We have previously held that the trial court does not diminish the jury's role or commit error when it states during the jury charge in the penalty phase of a death case that the jury's verdict is a recommendation or an `advisory verdict.' White v. State, 587 So.2d 1218 (Ala.Cr.App.1990), aff'd, 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992)." Burton v. State, 651 So.2d 641 (Ala.Cr.App.1993).
Considering the prosecutor's statements in the context of the entire trial, in the context in which those statements were made, and in connection with the other statements of the prosecutor and of the trial court, which correctly informed the jury of the advisory function of its verdict, we find no reversible error in the record in this regard.
"In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses `(o)ur task is to consider their impact in the context of this particular trial', and `not view the group of allegedly improper questions and comments in the abstract.' United States v. Davis, 546 F.2d 583, 593 (5th Cir.1977). `(W)e must assess the impact of the questions in the context of the entire trial.' United States v. Bosby, 675 F.2d 1174, 1185 (11th Cir. 1982)."
Wysinger v. State, 448 So.2d 435, 438 (Ala. Cr.App.1983). We find no reasonable possibility that the jury was misled, misinformed, or confused as to its critical role in sentencing under Alabama law. See Martin, 548 So.2d at 494.

IV
At the sentence phase of trial, the trial court properly refused to allow testimony from the appellant's family and friends requesting that the jury spare the appellant's life. We find that the action of the trial court did not prevent the jury from considering any mitigating evidence.
The trial court sustained the objection of the prosecutor and refused to allow Reverand Norris Hilton, Pastor of Forrest Avenue Baptist Church, to respond to the question, "[W]hat are your feelings about whether Michael ought to receive death in the electric chair ... or whether he ought to receive a sentence of life imprisonment without parole?" R. 1255, because to do so "invades the province of the jury.".
The trial court refused to allow the appellant's father, Robert Taylor, to respond to the question, "Are you asking the jury to spare his life?" R. 1295.
The trial court sustained the prosecutor's objection to the following question asked by defense counsel of the appellant's aunt, Betty McGriff, "Mrs. McGriff, are you asking this jury to spare Michael's life?" R. 1315. The trial court then informed defense counsel: "If you gentlemen can show me some law on that, that's fine, but I don't want that question asked again of any witness.... [M]y understanding of the law is that [that] is a question that invades the province of the jury and cannot be asked." R. 1315-16, 1317.
"[T]he opinion of a relative of a victim is irrelevant to the jury's determination of whether the death penalty should be imposed." Robison v. Maynard, 943 F.2d 1216, 1217 (10th Cir.), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991). See also Robison v. Maynard, 829 F.2d 1501, 1504-05 (10th Cir.1987). Such testimony is "calculated to incite arbitrary response" from the jury. Robison, 829 F.2d at 1505.
*52 Although Payne v. Tennessee, 501 U.S. 808, 826-28, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), held that the Eighth Amendment does not prohibit the admission of "victim impact" evidence at the sentencing phase of a capital trial,

"Payne merely put aside the bar to the introduction of and comment upon victim impact evidence which had been created in Booth [v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987)], and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989). The Court did not expand the universe of admissible relevant mitigating evidence established by Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), and Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).[4] ... We cannot agree that Payne portends admissibility of any evidence other than that related to the victim and the impact of the victim's death on the members of the victim's family. Nothing said by the Court suggests the Court intended to broaden the scope of relevant mitigating evidence to include the opinion of a victim's family member that the death penalty should not be invoked....
"We can take cognizance of the Court's rationale that victim impact evidence relates directly to the harm resulting from a defendant's act. The Chief Justice stated:
"`Victim impact evidence is simply another form or method of informing the sentencing authority about the specific harm caused by the crime in question, evidence of a general type long considered by sentencing authorities.'"

"Payne, 501 U.S. at 825, 111 S.Ct. at 2608. In this context, the desire of the victim's relative in no way constitutes relevant evidence because it does not relate to the harm caused by the defendant."
Robison, 943 F.2d at 1217-18 (footnote added).
Under Alabama law, nonstatutory mitigating evidence must be relevant.
"In addition to the mitigating circumstances specified in section 13A-5-51, mitigating circumstances shall include any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence of life imprisonment without parole instead of death, and any other relevant mitigating circumstance which the defendant offers as a basis for a sentence of life imprisonment without parole instead of death."
Ala.Code 1975, § 13A-5-52. "`[S]ubject only to the loose evidentiary requirement of relevance, capital defendants have a right to offer any evidence they choose on character or record or circumstances of the offense.'" Clisby v. State, 456 So.2d 99, 101 (Ala.Crim. App.1983) (quoting Stanley v. Zant, 697 F.2d 955, 960 (11th Cir.1983)), cert. denied, 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).
"Evidence is `relevant' if it logically relates to the ultimate, material inference in the case for which it is proffered." J. Colquitt, Alabama Law of Evidence § 4.1 (1990). "`Evidence is relevant if it has any probative value, however slight, upon a matter at issue in the case.' Phelps v. State, 439 So.2d 727, 736 (Ala.Crim.App.1983) `Evidence is relevant *53 if it has any tendency to throw light upon the matter in issue, even though such light may be weak and fall short of demonstration.' Austin v. State, 434 So.2d 289, 292 (Ala.Crim.App.1983)." Brewer v. State, 644 So.2d 39 (Ala.Cr.App.1994). "In this State, evidence is relevant if it has any logical relationship to the purpose for which it is offered." Rose v. State, 598 So.2d 1040, 1042 (Ala.Cr.App.1992).
It is the holding of this Court that the opinion of the friends or relatives of the defendant that the defendant should not be sentenced to death is not a relevant mitigating circumstance for the jury to consider at the penalty phase of a capital case. Compare McGahee v. State, 632 So.2d 976, 978 (Ala.Cr.App.), affirmed, 632 So.2d 981 (Ala. 1993) ("The physical effects of electrocution are not an aspect of the appellant's character or record and are not relevant to any of the circumstances of the crime; and we conclude that this type of evidence does not constitute evidence of mitigation."); Hinton v. State, 548 So.2d 547, 560-61 (Ala.Cr.App.1988), affirmed, 548 So.2d 562 (Ala.1989), cert. denied, 493 U.S. 969, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989) ("We interpret this section to limit mitigating evidence to that which assumes that the defendant committed the crime for which he was convicted.... This court therefore finds that polygraph results which indicate that the defendant is not guilty of the crime for which he is being sentenced are not relevant to either aggravating or mitigating circumstances and thus are inadmissible in a sentencing proceeding under § 13A-5-45(d).").

V
The appellant claims that the trial court erred in allowing the State to introduce into evidence an inculpatory oral statement made by the appellant indicating a specific intent to kill, which the prosecution allegedly improperly withheld from the defense.
At the suppression hearing held on March 12,1993 (R. 1, 67), witnesses for the prosecution (Detective Mike Garigues, Officer Troy Higdon, and Officer Pam Greer) testified that they did not remember the appellant's being asked if he intended to kill the victims. R. 109, 135, 156.
The suppression hearing was continued until March 19, 1993, at which time an investigator for the district attorney's office, Johnny Grant, was called as a witness by the defense and testified that the appellant had stated that
"he had intended to kill them. I mean, he went into the fact that the man moved you know, he saw the man still moving and trying to pull up on the refrigerator and he went over and hit him again. And he was askedI remember him being asked why. He said they knew who he was." R. 165.
During that hearing, the defense gave no indication that the state had failed to produce this oral statement. "A trial court should be informed of a party's failure to comply with discovery procedures as soon as the aggrieved party is aware of the non-compliance." Pettway v. State, 607 So.2d 325, 331 (Ala.Cr.App.1992). The initial qualification of the jury began on April 7, 1993. R. 1. Defense counsel did not request a continuance based on the belated discovery of the oral statement.
The appellant asserts on appeal that "[a]lthough inculpatory, the written statement and supplement were silent on the issue of a specific intent to kill and, indeed, suggested a lack of specific intent," and that the "oral statement had never been disclosed to the defense in the fifteen months since entry of the court's discovery order." Appellant's brief at 31, 32. We take issue with the appellant's characterization that his written statement "suggested a lack of specific intent." In that statement, the appellant admitted that he robbed and repeatedly beat both victims with a barbell:
"He opened the refrigerator and then I pulled out the bar bell and hit him in the back of the head. I hit him two or three times in the back of the head. He fell to the ground and then his wife heard the noise and came to see what was going on. She saw him laying on the floor and went over to see if she could help him. When she bent down over him I hit her in the back of the head. I hit her two or three times then she fell down. Then he was *54 talking and acting as if he was trying to crawl off so I went back to him an[d] hit him several more times. I really don't know how many times I hit him because my adrenaline was pumping. Then she was trying to say something to me so I hit her again with the barbell." C.R. 463.
Eighty-three-year-old Ivan Ernest Moore sustained 11 lacerations in and about the head area and sustained a total of 17 different wounds. He died as a result of blunt force injuries to the head. Seventy-nine-year-old Lucille Moore sustained 10 wounds and died as a result of blunt force blows to the head.
Immediately before trial on April 7, 1993, the prosecutor indicated in response to the inquiry of defense counsel that he was going to introduce evidence of the appellant's oral statement. At that time and for the first time, defense counsel objected on the ground that "during all the time that we've been in this case, some year and a half, this alleged statement where Michael Taylor says he intended to kill the victim was never given to us." R. 220.
In response to defense counsel's objection, the prosecutor stated that although he was present when the appellant made his statement, he "had no independent recollection of that until [Grant] testified." R. 225. The prosecutor represented that the other officers had also remembered the statement only since Grant testified. R. 221, 225. The prosecutor also represented to the court that he had opened his files to the defense:
"Let's make the record straight, because I don't want an Appellate Court getting the wrong idea about what's going on. And y'all correct me if I'm wrong. I have beensat down with both defense counsel. I have gone through my entire file with them, page by page. I have sat down with them and gone through the police department's file, page by page.
"We have gone through every exhibit, item by item. We have gone through every photograph, picture by picture. I have told them the witnesses I expect to call and have indicated to them that I will also tell them the order in which I'm going to call them, what I expect the witnesses to testify to and any specific evidence or exhibits that I'll expect to put in with each of those witnesses. And I don't want the record reflecting that anybody has sandbagged anybody in this case, because that's just not true. And it's not the case. It never has been the case."
R. 222-23.
At trial, Gadsden Police Officer Troy Higdon testified that during the course of questioning by the police, the appellant stated that "[h]e knew the Moores knew him" and that "he knew that he would have to kill them, because they did know him and could identify him." R. 1067.
We find no error in the admission of this testimony. There is no evidence that the prosecutor deliberately withheld any evidence from the appellant. There is no indication that the belated discovery of this oral statement prejudiced the appellant. Prejudice caused by the late disclosure is a "prerequisite for a reversal on this issue." Pettway, 607 So.2d at 332. See Stewart v. State, 601 So.2d 491, 499 (Ala.Cr.App.1992); Robinson v. State, 577 So.2d 928, 930 (Ala.Cr.App. 1990); Brown v. State, 545 So.2d 106, 114-15 (Ala.Cr.App.1988), affirmed, 545 So.2d 122 (Ala.), cert. denied, 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 206 (1989). See also De-Bruce v. State, 651 So.2d 599, 622 (Ala.Cr. App.1993) ("`Tardy disclosure of Brady material is generally not reversible error unless the defendant can show that he was denied a fair trial.' ... A delay in disclosing Brady material requires reversal only if the `lateness of the disclosure so prejudiced appellant's preparation or presentation of his defense that he was prevented from receiving his constitutionally guaranteed fair trial.'"). There is no probability that the jury would have resolved the appellant's case differently had the State disclosed the oral statement on a timely basis.

VI
The trial court properly refused the appellant's request for an instruction on the offense of felony murder as a lesser included offense of the charged capital offense. We reject the appellant's argument that the appellant's *55 admission that "he hit the Moores a number of times, but that he did not even recall how many because of the adrenaline pumping ... suggests that at the moment of the crime Mr. Taylor was not clearly analyzing the consequences of his actions, but instead was simply blindly acting out." Appellant's brief at 40.
There is no rational basis for a verdict convicting the defendant of felony murder. See Ala.Code 1975, § 13A-1-9(b). The victims' deaths were not "unintended deaths caused by [the defendant's] dangerous conduct." White v. State, 587 So.2d 1218, 1231 (Ala.Cr.App.1990), affirmed, 587 So.2d 1236 (Ala.1991), cert. denied, 502 U.S. 1076, 112 S.Ct. 979, 117 L.Ed.2d 142 (1992), quoted in Williams v. State, 601 So.2d 1062, 1075 (Ala. Cr.App.1991).
The evidence shows that the appellant went to the Moore's residence because he knew them. He took with him a duffel bag containing a barbell. After the appellant had talked with Mr. Moore and had been given some water and a doughnut, the appellant used the barbell to brutally beat and kill both Mr. and Mrs. Moore. The appellant then removed the billfold from Mr. Moore's back pocket, took the keys off Mr. Moore's belt, took $5.00 from Mrs. Moore's purse, stole the Moores' car, and forged a check on their account in the amount of $500. The trial court properly refused to instruct the jury on felony murder as a lesser included offense.

VII
We reject the appellant's contention that at the penalty phase of the trial, the prosecutor improperly commented on the appellant's right to remain silent by arguing that "[t]here's absolutely no showing of remorse or grief." R. 1358, 1377. There was no objection to this comment at trial. There was evidence presented at the penalty phase that the appellant displayed no remorse after being taken into custody. R. 1243-44.
"While this failure to object does not preclude review in a capital case, it does weigh against any claim of prejudice." Ex parte Kennedy, 472 So.2d [1106], at 1111 [(Ala.1985)] (emphasis in Kennedy ]). "This court has concluded that the failure to object to improper prosecutorial arguments ... should be weighed as part of our evaluation of the claim on the merits because of its suggestion that the defense did not consider the comments in question to be particularly harmful." Johnson v. Wainwright, 778 F.2d 623, 629 n. 6 (11th Cir.1985), cert. denied, 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). "Plain error is error which, when examined in the context of the entire case, is so obvious that failure to notice it would seriously affect the fairness, integrity, and public reputation of the judicial proceedings." United States v. Butler, 792 F.2d 1528, 1535 (11th Cir.), cert. denied, 479 U.S. 933, 107 S.Ct. 407, 93 L.Ed.2d 359 (1986). See also Biddie v. State, 516 So.2d 837, 843 (Ala.Cr.App.1986), reversed on other grounds, 516 So.2d 846 (Ala.1987).'"
Ex parte McWilliams, 640 So.2d 1015 (Ala. 1993).
Reviewing the closing argument of the prosecutor, in its entirety, this Court is convinced that the references to the appellant's lack of remorse were not comments on the appellant's constitutional right against self-incrimination but rather references to the appellant's behavior after he had murdered the victims.

VIII
The appellant asserts that in its oral instructions the trial court defined "reasonable doubt" improperly. See Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The appellant also contends that the district attorney "consistently misinformed the jury about the State's burden of proof and that the trial judge repeated and reinforced that error when he instructed the jury that "attorneys' statements and arguments are intended to help [the jury] understand the evidence and apply the law." R. 1138. Appellant's brief at 47, 50.
We note that immediately after this complained-of instruction, the trial court further instructed the jury that the statements and arguments of the attorneys "are not evidence and you should disregard any remark, statement or argument which is not supported by *56 the evidence or by the law as given to you by the Court." R. 1138. There was no objection to the prosecutor's argument.
At the conclusion of the trial court's oral charge, defense counsel objected to only the following matters: the court's failure to charge the jury on any lesser included offense; the court's instruction that "the jury is to decide if the defendant is guilty of count one, two, or three of capital murder"; the verdict forms; and "the charge itself in that it's not come from any approved charge or book or document of any kind that's previously been approved as a charge in a capital case, and we just feel like for you to make it up on your own is not the proper course." R. 1160, 1161. There was no objection to the instruction on reasonable doubt.
The trial court defined reasonable doubt in its oral charge as follows:
"The term reasonable doubt means some doubt which has some good reason for it arising out of the evidence or a part of the evidence or lack of evidence in the case. It does not mean a doubt which arises from some mere whim or from some groundless surmise or guesswork on your part.
"Now, ladies and gentlemen, while it's rarely possible to prove anything to an absolute certainty, a defendant is not to be convicted upon mere suspicion, conjecture or surmise. The law requires you to be satisfied of the defendant's guilt beyond a reasonable doubt, but the law at the same time prohibits you from going outside the evidence to hunt up doubts upon which to acquit the defendant.
"As I've told you, a reasonable doubt may arise not only from the evidence produced, but it may also arise from a part of the evidence or lack of evidence in the case.
"It is your duty to carefully consider all of the evidence in the case, and in so doing you should entertain such doubts only as arise from the evidence or a part of the evidence or lack of evidence in the case and are reasonable as I have defined the term reasonable to be to you.
"Unless the doubt is a reasonable one and does so arise, it would not be sufficient in law to authorize a verdict of guiltyof not guilty.
"Stated another way, ladies and gentlemen, a reasonable doubt exists in a case when after careful and impartial consideration of all the evidence in the case the jurors do not feel convinced to a moral certainty that the defendant is guilty.
"Now, I've given you a term `reasonable doubt,' and I want to tell you a little bit about moral certainty. Oftentimes, ladies and gentlemen, you will hear an explanation of the State's burden of proof in a criminal case. The State has the burden of proving a defendant guilty beyond a reasonable doubt. At times you'll hear it stated the burden is to prove the defendant guilty to a moral certainty. Sometimes you'll hear it stated that it's to prove the defendant guilty beyond a reasonable doubt and to a moral certainty.
"These terms mean the same thing and just because one is used in place of another or they may be used together does not add anything or take away anything from it.
"The court charges the jury that the burden is on the state and it is the duty of the State to show beyond all reasonable doubt and to the exclusion of every other reasonable hypothesis every circumstance necessary to show that the defendant is guilty, and unless the State has done that in this case it is your duty, ladies and gentlemen of the jury, to render a verdict of not guilty."
R. 1152-56.
This Court addressed this issue in Dobyne v. State, [Ms. CR 91-1840, April 15, 1994] ___ So.2d ___ (Ala.Cr.App.1994).
"Use of some but not all of the terminology found offensive in Cage does not automatically constitute reversible error. Stewart v. State, 601 So.2d 491 (Ala.Cr. App.1992), rev'd in part and remanded on other grounds, [Ms. 1920509, September 3, 1993] 659 So.2d 122 (Ala.1992); Williams [v. State, 601 So.2d 1062 (Ala.Cr.App. 1991)]; Murphy v. State, 596 So.2d 42 (Ala.Cr.App.1991), writ denied, 596 So.2d 45 (Ala.), cert. denied, 506 U.S. 827, 113 *57 S.Ct. 86, 121 L.Ed.2d 49 (1992); Adams v. State, 587 So.2d 1265 (Ala.Cr.App.1991).
"Recently, the United States Supreme Court revisited the reasonable doubt charge in Victor v. Nebraska, ___ U.S. ___, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). Victor involved reasonable doubt instructions given in petitioners Sandoval and Victor death penalty cases. The United States Supreme Court, while finding no error in the court's instructions, further explained its holding in Cage.
"The instructions given in Sandoval's case equated reasonable doubt with `moral evidence' and `moral certainty.' The court found that defining reasonable doubt by using the term `moral evidence' did not induce the jury to convict Sandoval on less than reasonable doubt. The United States Supreme Court stated the following concerning `moral certainty':
"`In the Cage instruction, the jurors were simply told that they had to be morally certain of the defendant's guilt; there was nothing else in the instruction to lend meaning to the phrase. Not so here. The jury in Sandoval's case was told that a reasonable doubt is "that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." Sandoval App. 49.... The instruction thus explicitly told the jurors that their conclusion had to be based on the evidence in the case. Other instructions reinforced this message. The jury was told "to determine the facts of the case from the evidence received in the trial and not from any other source." Id., at 38. The judge continued that "you must not be influenced by pity for a defendant or by prejudice against him.... You must not be swayed by mere sentiment, conjecture, sympathy, passion, prejudice, public opinion or public feeling." Id., at 39. Accordingly, there is no reasonable likelihood that the jury would have understood moral certainty to be disassociated from the evidence in the case.'
"Victor, ___ U.S. at ___, 114 S.Ct. at 1248.
"Sandoval's instruction also contained the phrase `not a mere possible doubt.' The Court stated that this phrase was accurate because `"[a] `reasonable doubt,' at a minimum, is one based upon `reason.' "`Victor, ___ U.S. at ___, 114 S.Ct. at 1248.
"In Victor's case, the trial court's instruction on reasonable doubt equated reasonable doubt with a `substantial doubt.' Victor argued that by equating those terms the court `overstated the degree of doubt necessary for acquittal.' The United States Supreme Court distinguished this instruction from the instruction given in Cage. The United States Supreme Court stated:
"`We did say in [Cage] that "the words `substantial' and `grave,' as they are commonly understood, suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." 498 U.S., at 41 [111 S.Ct. at 329]. But we did not hold that the reference to substantial doubt alone was sufficient to render the instruction unconstitutional. Cf. Taylor v. Kentucky, 436 U.S. [478], 488 [98 S.Ct. 1930, 1936, 56 L.Ed.2d 468 [1978] (defining reasonable doubt as a substantial doubt, "though perhaps not in itself reversible error, often has been criticized as confusing").... Rather, we were concerned that the jury would interpret the term "substantial doubt" in parallel with the preceding reference to "grave uncertainty," leading to an overstatement of the doubt necessary to acquit. In the instruction given in Victor's case, the context makes clear that substantial is used in the sense of existence rather than magnitude of the doubt, so the same concern is not present.
"`In any event, the instruction provided an alternative definition of reasonable doubt: a doubt that would cause a reasonable person to hesitate to act. This is a formulation we have repeatedly approved, Holland v. United States, 348 *58 U.S. [121] at 140, 75 S.Ct. 127 [at 137-138, 99 L.Ed. 150 (1954)]; cf. Hopt v. Utah, 120 U.S. [430 at] 439, 441, 7 S.Ct. 614 [at 618-620, 30 L.Ed. 708 (1887)], and to the extent the word "substantial" denotes the quantum of doubt necessary for acquittal, the hesitate to act standard gives a common-sense benchmark for just how substantial such a doubt must be. We therefore do not think it reasonably likely that the jury would have interpreted this instruction to indicate that the doubt must be anything other than a reasonable one.'"
"Victor, ___ U.S. at ___, 114 S.Ct. at 1250.
"The instruction in Victor's case also referred to the standard `strong probabilities.' Victor argued that this statement `understated the government's burden.' The Court stated, taking the instruction as a whole, `"While it is true that [the challenged instruction] used the words `probabilities' and `strong probabilities, ... it emphasized the fact that those probabilities must be so strong as to exclude any reasonable doubt, and that is unquestionably the law" (citing Hopt v. Utah, [120 U.S. 430, 439 [7 S.Ct. 614, 618, 30 L.Ed. 708 1887].' Victor, ___ U.S. at ___, 114 S.Ct. at 1251.
"In this case, the court's instruction thoroughly and accurately defined reasonable doubt. The court told the jurors that reasonable doubt must be based `on the state of the evidence.' The instructions contained none of the terms that the United States Supreme Court found questionable in Victor and reversible in Cage."

Although the instructions of the trial court quoted earlier are not a model for imitation, we find that they do not violate the principles of Cage. The instructions do not equate the term "reasonable doubt" with a "grave uncertainty" or an "actual substantial doubt." See Ex parte McWilliams, 640 So.2d 1015 (Ala.1993).
"We first note that `beyond a reasonable doubt' and `to a moral certainty' are not exactly synonymous. In Ex parte Beavers, 598 So.2d 1320, 1321 (Ala.1991), this Court approved a jury instruction that included the following:
"`And the expression to a moral certainty' means practically the same thing as beyond a reasonable doubt. Because if you are convinced to a point where you no longer have a reasonable doubt, then you are convinced to a moral certainty."
"(Emphasis added.) In other words, `moral certainty' is the state a jury reaches when it is convinced of the defendant's guilt beyond a reasonable doubt. We further note, however, that the trial court equated the two phrases only once, at the beginning of his introductory charge to the jury. Moreover, as set out below, the trial court's instruction, taken as a whole, does not suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard. Accordingly, we hold that this error in the trial court's instruction is harmless. Rule 45, A.R.App.P.
"In Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990), the United States Supreme Court reversed a criminal conviction, holding that the trial court's instruction on reasonable doubt violated the defendant's due process rights. The trial court in that case had equated reasonable doubt with `actual substantial doubt' and had instructed the jury that a reasonable doubt `must be such doubt as would give rise to a grave uncertainty, raised in your mind by reasons of the unsatisfactory character of the evidence or lack thereof.' Cage v. Louisiana, 498 U.S. at 40, 111 S.Ct. at 329, 112 L.Ed.2d at 342 (quoting State v. Cage, 554 So.2d 39, 41 (La.1989)). The trial court in Cage further instructed the jury that `What is required is not an absolute or mathematical certainty, but a moral certainty.' Id. The United States Supreme Court concluded that `the words "substantial" and "grave" ... suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard.' Cage v. Louisiana, 498 U.S. at 41, 111 S.Ct. at 329, 112 L.Ed.2d at 342. It then held that, considering the use of those words in conjunction with `moral certainty,' a reasonable juror could have understood the instruction as allowing `a finding of guilt based on a degree of proof *59 below that required by the Due Process Clause.' Id. (footnote omitted).
"`In construing the instruction, we consider how reasonable jurors could have understood the charge as a whole.' Id. (citing Francis v. Franklin, 471 U.S. 307, 316, 105 S.Ct. 1965, 1972, 85 L.Ed.2d 344 (1985)). Having compared the instructions at question in Cage and those in the present case, we find that the instruction given here does not contain the same infirmity as that in Cage. Specifically, the instruction in the present case does not require "a grave uncertainty" for acquittal.* Accordingly we reject this claim.
*"In Gaskins v. McKellar, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991), one of the issues presented in the petition was whether Cage announced a new rule. In his opinion respecting the denial of the petition, Justice Stevens indicated that the central flaw in the instruction at issue in Cage was that the jury was instructed that a reasonable doubt `must be a doubt as would give rise to a grave uncertainty.' Gaskins (Stevens, J., concurring in denial of certiorari)."
Ex parte McWilliams, 640 So.2d 1015 (Ala. 1993) (footnote in McWilliams); see also United States v. Nickens, 955 F.2d 112, 119-20 (1st Cir.1992), cert. denied, 506 U.S. 835, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992) (instructions equating "reasonable doubt" with "real doubt" and comparing jury's deliberations with personal decision-making not plain error); Gaskins v. McKellar, 916 F.2d 941, 952 (4th Cir.1990), cert. denied, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991) (instruction requiring "a doubt for which you can give a reason[,] [i]t is a substantial doubt" did not impermissibly raise degree of doubt for acquittal when surrounding context placed entire burden of proof on government).
Reviewing the entire oral charge of the trial court, of which the material quoted above is only a portion, we find that the instructions do not lessen the State's burden of proof or transform the reasonable doubt standard into a higher degree of doubt. See DeBruce v. State, 651 So.2d 599 (Ala.Cr.App. 1993); Johnson v. State, 620 So.2d 679 (Ala. Cr.App.1992), reversed on other grounds, 620 So.2d 709 (Ala.1993), on remand, 620 So.2d 714 (Ala.Cr.App.), cert. denied, ___ U.S. ___, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993).

IX
The trial court properly denied the appellant's request for "an order authorizing the expenditure of up to $3,000 for investigative services and expenses, subject to application for additional funds if needed." C.R. 152.
The appellant's motion was filed on March 18, 1993. A hearing was held on March 19, 1993, and the trial court took the matter under advisement. R. 183. The trial court denied the motion on April 7, 1993, at the beginning of trial before qualifying the jury. R. 208.
At the pretrial hearing on March 19, defense counsel requested that the trial court grant the motion but also stated: "I guess, as a practical matter, Charlie and I have done most of that work as far as trying to run down witnesses.... I think as a practical matter Charlie and I have done most of it." R. 207-08. In denying the motion, the trial court stated:
"That motion is denied at this time. But let me add a caveat to that. I'm not saying that at some point I may not allow some type of expenditures, but we may take another look at that. But at this point, it's denied." R. 208.
We find no violation of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985).
"[B]efore the court is obliged to appoint an expert for an indigent defendant the defendant must satisfy the following:
"`The threshold question requires the showing of a need for the requested services. Ex parte Argo, 42 Ala.App. 546, 547, 171 So.2d 259 (1965). We recognized in Gwin v. State, 425 So.2d 500, 508 (Ala.Cr.App.1982), cert. quashed, 425 So.2d 510 (Ala.1983), that before determining whether fundamental fairness requires that an accused be afforded the opportunity to have an expert of his choosing examine a piece of `critical evidence whose nature is subject to varying expert opinion,' it should first be determined that the evidence is `critical.' Evidence is `critical' for purposes of the due *60 process clause if it could induce a reasonable doubt in the minds of enough jurors to avoid a conviction when that evidence was developed by skilled counsel and experts. White v. Maggio, 556 F.2d 1352, 1357-58 (5th Cir.1977); Gwin, supra."
"Ex parte Sanders, 612 So.2d 1199, 1201 (Ala.1993), quoting Grayson v. State, 479 So.2d 69, 72 (Ala.Cr.App.1984), affirmed, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985). See also DuBose [Dubose] [v. State, [Ms. CR-89-359, September 30, 1993] 662 So.2d 1156 (Ala.Cr.App.1993)]."
Dobyne v. State, [Ms. CR 91-1840, April 15, 1994] ___ So.2d ___ (Ala.Cr.App.1994). The appellant in this case "`made no showing of a particularized need or that such assistance was necessary for an adequate defense' as required under Ake. Nelson v. State, 511 So.2d 225, 237 (Ala.Crim.App.1986), aff'd, 511 So.2d 248 (Ala.1987), cert. denied, 486 U.S. 1017, 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988)." Dill v. State, 600 So.2d 343, 371 (Ala.Cr.App. 1991), affirmed, 600 So.2d 372 (Ala.1992), cert. denied, 507 U.S. 924, 113 S.Ct. 1293, 122 L.Ed.2d 684 (1993). "[A] defendant must show the trial court that there exists a reasonable probability both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." Moore v. Kemp, 809 F.2d 702, 712 (11th Cir.1987), cert. denied, 481 U.S. 1054, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987) (footnote omitted). See also Dubose v. State, 662-So.2d 1156 (Ala.Cr. App.1993); Duren v. State, 507 So.2d 111, 120 (Ala.Cr.App.1986), affirmed, 507 So.2d 121 (Ala.1987), cert. denied, 484 U.S. 905, 108 S.Ct. 249, 98 L.Ed.2d 206 (1987).

X
The trial court properly denied the appellant's motion to suppress his post-arrest statements to the police on the ground that those statements resulted from an illegal arrest.
The appellant's statements were not the product of an illegal arrest. The appellant was arrested in Birmingham, Alabama, by officers of the Gadsden Police Department. The officers had a felony warrant charging the appellant with forgery in Etowah County. At the time of the appellant's arrest, the Etowah County felony warrant had not been "domesticated" by a judge or magistrate of Jefferson County. Ala.Code 1975, § 15-10-10.
Before the effective date of the Alabama Rules of Criminal Procedure in January 1991,[5] "[a] police officer [could] arrest in his official capacity without a warrant only within the limits of the political subdivision of the state of which he is a police officer." Ex parte Wallace, 497 So.2d 96, 97 (Ala.1986). See also Reed v. State, 48 Ala.App. 120, 122, 262 So.2d 321, 323 (1972); Jenkins v. State, 339 So.2d 133, 136 (Ala.Cr.App.), cert. denied, 339 So.2d 137 (1976). However, Rule 3.3(a), A.R.Cr.P., provides: "The arrest warrant shall be directed to and may be executed by any law enforcement officer within the State of Alabama."
"The arrest warrant shall be directed to and may be executed by any `law enforcement officer' within the State of Alabama. Allowing a `law enforcement officer' to execute a warrant `within the State of Alabama' is a major change in prior practice, in that under § 15-10-1 those officers authorized to make arrests could be made only `within the limits of the county.' As pointed out above, the Committee determined that the definition of `law enforcement officer' should be a `functional definition.' See Committee Comments to Rule 3.3."
H. Maddox, Alabama Criminal Procedure § 3.3 (1990).
Furthermore, the officers had probable cause to arrest the appellant for either murder, theft, or receiving stolen property after they observed the appellant enter the victims' automobile.
*61 We also reject the appellant's claim that his inculpatory statements were the result of custodial interrogation that was "extremely coercive." According to the appellant, improper threats were made; Mr. Taylor's request for an attorney was ignored; [and] Mr. Taylor had been drinking the evening of his arrest and was experiencing sleep deprivation at the time of his questioning." Appellant's brief at 61. These contentions are simply not supported by the record. The State presented uncontradicted evidence that the appellant's statements were voluntary and that the officers complied with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

XI
The trial court did not abuse its discretion in denying the appellant's request that the district attorney testify at the suppression hearing.
The district attorney prosecuted the appellant. The district attorney was also present during the custodial interrogation of the appellant after the appellant had waived his constitutional rights. It is uncontradicted that at the interrogation the district attorney merely listened and did not participate. R. 153, 163.
At the beginning of the suppression hearing, defense counsel informed the trial court that they intended to call the district attorney as a witness and requested that he be subjected to "the rule" and excluded from the hearing. R. 69. That motion was denied. R. 69.
There were six persons, including the appellant, present during the interrogation of the appellant. The appellant did not testify at the suppression hearing. The four law enforcement officers who were present, including the district attorney's investigator, testified. The sixth person, the district attorney, did not testify.
At the conclusion of the hearing, the appellant requested that the defense be permitted to call the district attorney as a witness, asserting that "We feel like we, as his lawyersMr. Taylor's lawyers, should call every witness who might have any knowledge whatsoever about the facts surrounding this taking of this statement." R. 172. Defense counsel never contended that anything improper occurred during the interrogation ("And Jim [the district attorney] is possibly a witness to whatever happened, whether it did or didn't happen." R. 172), and never made any proffer of the district attorney's anticipated testimony.
In response to the appellant's request, the district attorney represented to the trial court that his testimony would be "cumulative" to that of the four other witnesses, and that he could not testify to the voluntariness of the statement because he was not present when the appellant waived his constitutional rights. R. 175. The trial court, without comment, denied the appellant's request that the district attorney be called as a witness. R. 172. The appellant argues that the district attorney's response was "testimony."
"[T]he matter of allowing a prosecutor to become a witness is largely within the discretion of the trial judge." Waldrop v. State, 424 So.2d 1345, 1348 (Ala.Cr.App.1982).
"In cases in which a defendant has sought to put the prosecuting attorney on the stand, the courts have likewise held or recognized that a prosecuting attorney is a competent witness, and in a few cases have indicated that the constitutional right of a defendant to process to compel the attendance of witnesses on his behalf is applicable to such situation. At the same time, however, it has generally been held or recognized that the question whether a defendant in a particular case should be allowed to call a prosecuting attorney to the stand is within the discretion of the trial court."
Erwin S. Barbre, J.D., Annotation, Prosecuting Attorney as a Witness in Criminal Case, 54 A.L.R.3d 100, 106-07 (1973).
The appellant complains that the district attorney should not have been permitted to "testify" and to appear as a witness against the defendant without being placed under oath and without being subjected to cross-examination. This objection is raised initially on appeal and refers to the fact that the district attorney responded to the appellant's *62 request that he be compelled to testify by representing to the trial court what his testimony would be. This response, however, was not improper. The district attorney, although called as a witness by the defense, remained the prosecuting attorney and an officer of the court. As prosecuting attorney he was simply making a proffer of his expected testimony. Defense counsel had not advanced any summary of the prosecutor's anticipated testimony and did not contradict the district attorney's representation of what his testimony would be if he were called to testify. We conclude that the trial court did not abuse its discretion in denying the appellant's request to compel the district attorney to testify at the suppression hearing.

XII
We find the appellant's arguments concerning the alleged impropriety of the district attorney's conduct to be without merit.
1. The appellant contends that "the District Attorney repeatedly coached and manipulated the veniremembers to say that they had not formed an opinion about Mr. Taylor's guilt or innocence despite the overwhelming amount of publicity about this case." Appellant's brief at 64-65. The appellant's claim of "overwhelming publicity" is not supported by the record. The appellant made no objection on this basis to the district attorney's questions on voir dire. Those questions do not constitute plain error. The district attorney's conduct did not infect the trial with unfairness so as to make the resulting conviction a denial of due process. Compare Bankhead v. State, 585 So.2d 97, 107 (Ala.Cr.App.1989) ("In judging a prosecutor's closing argument, the standard is whether the argument `so infected the trial with unfairness as to make the resulting conviction a denial of due process.' Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986), quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)"), remanded on other grounds, 585 So.2d 112 (Ala.1991). "`Plain error' arises only if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceeding." Ex parte Bankhead, 585 So.2d at 117.
"To effectuate the fundamental right to an impartial jury, courts must permit a meaningful and effective voir dire examination (see 47 Am.Jur.2d Jury § 200 (1969)); therefore, a very wide latitude is allowed in conducting the examination, extending to any matter that might aid the parties in exercising their peremptory challenges and to any matter that might tend to affect the verdict. See Burlington Northern R.R. v. Whitt, [575 So.2d 1011, 1017 (Ala.1990), cert. denied, 499 U.S. 948, 111 S.Ct. 1415, 113 L.Ed.2d 468 (1991)]; Alabama Power Co. v. Bonner, [459 So.2d 827 (Ala.1984)].
"The purpose of a probing, wide-ranging voir dire examination, besides acquainting the jury with the type of case before it, is to enable a party to select a jury of men and women qualified to competently judge and determine the facts in issue without bias, prejudice, or partiality. See 47 Am. Jur.2d Jury § 195; see, also, F. Hare, "Voir Dire and Jury Selection," 29 Ala.Lawyer 160 (1968), quoted with approval in Alabama Power Co. v. Bonner, supra. It is an abuse of discretion for a trial court to so limit the voir dire examination as to infringe upon a litigant's ability to determine whether a prospective juror is free from bias or prejudice and thereby to effectively exercise his strikes."
McLain v. Routzong, 608 So.2d 722, 724 (Ala. 1992) (emphasis in McLain).
2. The appellant asserts that the "District Attorney was allowed to flagrantly misrepresent the law and manipulate the prospective jurors into mis-stating their ability and willingness to consider mitigating evidence in determining Mr. Taylor's punishment." Appellant's brief at 66. We reject the appellant's contention that the "District Attorney began to coach the veniremembers to lie about their willingness to consider mitigating evidence." Appellant's brief at 66.
The appellant's argument is based on the prosecutor's questions to the veniremembers:
"Mr. Lee, will you consider it [age and no prior criminal history as mitigating factors]? You might not put much stock in it, but would you consider his age and consider *63 any prior criminal history or lack of it he had, even if you don'tLike I mentioned earlier, you decide how much weight you give to it. You might not put any to it, but would you at least consider it?" R. 495.
The appellant's contention is without merit.
"We addressed a similar issue in Cochran v. State, 500 So.2d 1161 (Ala.Cr.App.1984): "`It is not required that evidence submitted by the accused as a nonstatutory mitigating circumstance be weighed as a mitigating circumstance by the trial judge. Mikenas v. State, 407 So.2d 892, 893 (Fla.1981).
"`Although consideration of all mitigating circumstances is required by the United States Constitution, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the decision of whether a particular mitigating circumstance in sentencing is proven and the weight to be given it rest with the judge and jury. Lucas v. State, 376 So.2d 1149 (Fla.1979)." Smith v. State, 407 So.2d 894, 901 (Fla.1981).
"`The fact that the sentencing order does not refer to the specific types of non-statutory `mitigating' evidence petitioner introduced indicates only the trial court's finding the evidence was not mitigating, not that such evidence was not considered.... What one person may view as mitigating, another may not." Dobbert v. Strickland, 718 F.2d 1518, 1524 (11th Cir.1983).
". . . .
"... Merely because an accused proffers evidence of a mitigating circumstance does not require the judge or the jury to find the existence of that fact. Mikenas, supra; Smith, supra."
Harrell v. State, 470 So.2d 1303, 1308 (Ala. Cr.App.1984), affirmed, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985).
3. The appellant complains that the district attorney "asked so many leading questions that, in essence, he testified for every state's witness." Appellant's brief at 69. This issue was not preserved by objection at trial and we find no plain error. "Whether to allow or disallow a leading question is within the discretion of the trial court and except for a flagrant violation there will not be reversible error." Bradford v. Stanley, 355 So.2d 328, 331 (Ala.1978).
4. The appellant asserts that the district attorney "improperly injected himself, his experiences, his opinions, and his own morality into Mr. Taylor's trial." Appellant's brief at 70. The appellant contends that "[t]hese nuggets of personal information were designed to improperly build up the District Attorney's character and credibility in the eyes of the jury and to portray him as a family man and regular, good guy," and were "designed to impress the jury with his legal knowledge and expertise and to sway them to convict and to sentence Mr. Taylor to death on that basis." Appellant's brief at 71. The appellant also contends that the prosecutor "offered the jury his personal opinion of the strength of the evidence against Mr. Taylor." Appellant's brief at 71. No objection was made to these allegedly improper remarks. We find no plain error and find that the appellant has either exaggerated or mischaracterized the prosecutor's comments.
"[T]he prosecutor was not injecting his own knowledge or experience into the argument, nor was he indicating a personal belief in the veracity of the witnesses' statements. `During closing argument, the prosecutor as well as defense counsel has a right to present his impressions from the evidence, if reasonable, and may argue every legitimate inference.' Milton v. State, 417 So.2d 620 (Ala.Crim.App.1982)."
Ex parte Waldrop, 459 So.2d 959, 961 (Ala. 1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985).
5. The appellant contends that the district attorney argued facts not in evidence during both the guilt stage and the sentence stage of his trial. The appellant failed to present to the trial court the objections he now raises. We find no plain error and conclude, after review, that the prosecutor's comments were proper and legitimate inferences from the evidence.

*64 "While in argument to the jury, counsel may not argue as a fact that which is not in evidence; nevertheless, he may state or comment on proper inferences from the evidence and may draw conclusions from the evidence based upon his own reasoning. Sanders v. State, 423 So.2d 348 (Ala. Crim.App.1982); Speigner v. State, 369 So.2d 39 (Ala.Crim.App.), cert. denied, 369 So.2d 46 (Ala.1979); Liner v. State, 350 So.2d 760 (Ala.Crim.App.1977). The prosecutor, as does defense counsel, has a right to present his impressions from the evidence. Sanders, supra; Hayes v. State, 395 So.2d 127 (Ala.Crim.App.1980), cert. denied, 395 So.2d 150 (Ala.1981); McQueen v. State, 355 So.2d 407 (Ala. Crim.App.1978). He may argue every legitimate inference and may examine, collate, shift and treat the evidence in his own way. Sanders, supra; Hayes, supra; McQueen, supra. Liberal rules are allowed counsel in drawing inferences from the evidence in their argument to the jury, whether they are truly drawn or not. Sanders, supra; Liner, supra; Smith v. State, 344 So.2d 1239 (Ala.Crim.App.), cert. denied, 344 So.2d 1243 (Ala.1977). Control of closing argument rests in the broad discretion of the trial judge and, where no abuse of discretion is found, there is no error. Thomas v. State, 440 So.2d 1216 (Ala.Crim.App.1983); Robinson v. State, 439 So.2d 1328 (Ala.Crim.App.1983); Elston v. State, 56 Ala.App. 299, 321 So.2d 264 (1975). The trial judge can best determine when discussion by counsel is legitimate and when it degenerates into abuse. Hurst v. State, 397 So.2d 203 (Ala.Crim. App.), cert. denied, 397 So.2d 208 (Ala. 1981); Garrett v. State, 268 Ala. 299, 105 So.2d 541 (1958)."
Sasser v. State, 494 So.2d 857, 859-60 (Ala. Cr.App.1986).
"Indeed, defendant insists that the matter of argument and method of examination of witnesses by the solicitor, in large part hereinabove related, was improper and reprehensible, and highly prejudicial to such an extent as to call for a new trial. Much stress is laid upon the case of Berger v. United States, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314. But we find no parallel between that case and this. We are in full accord with the holding that a prosecuting officer should be fair and take no undue advantage of the accused. But the argument here advanced would require more, and would leave out of consideration the solicitor's conviction that he was discharging a duty to society by his prosecution of the accused whom he honestly believed guilty, and it would leave out of consideration the human element that in the heat of debate some harsh expression, though justified by the proof, fell from his lips. The proprieties must not be overreached. But, after all, we must not lose sight of the fact that a trial is a legal battle, a combat in a sense, and not a parlor social affair. The solicitor is yet under duty to prosecute with earnestness and vigorto strike hard blows, but not foul ones. Berger v. United States, supra."
Arant v. State, 232 Ala. 275, 280, 167 So. 540, 544 (1936).
"Of necessity a wide discretion must be allowed the trial judge in regulating the argument of counsel. Trials are adversary in nature. Vigorous prosecution and defense is to be expected. Neither defense counsel nor the prosecutor should be too closely hampered by niceties of speech if he is to be effective, but should be permitted to say his say in his own style. This of course does not mean that unfair and prejudicial argument is to be condoned for one instant. All argument of counsel is to be measured in the background and atmosphere of courtrooms. And as stated in Arant v. State, 232 Ala. 275, 167 So. 540, 544, `Such statements are usually valued by the jury at their true worth * * * and not expected to become factors in the formulation of their verdicts.'"
Bullard v. State, 40 Ala.App. 641, 645, 120 So.2d 580, 584 (1960).
6. The appellant argues that at the penalty phase of the trial the district attorney "attempted to denigrate and discredit in the minds of the jurors the mitigating evidence presented on behalf of Mr. Taylor." Appellant's brief at 75. The appellant asserts that the prosecutor "tried to convince the jury *65 that, although factually true, these [mitigating] circumstances did not provide a reason to `reward' the defendant with a life sentence. In other words, the prosecutor's argument was that these undisputed facts should not be considered mitigating." Appellant's brief at 78. This issue is raised for the first time on appeal. We find no plain error in this regard.
"[T]he impeachment of the evidence of defendant and the matter of impairment of its weight are properly matters for argument of counsel...." Mosley v. State, 241 Ala. 132, 136, 1 So.2d 593, 595 (1941). "It is proper for counsel to disparage the case of his opponent if he speaks with propriety and does not go outside the record." 23A C.J.S. Criminal Law § 1263 (1989).
7. The appellant asserts that, during his closing argument at the penalty phase of the trial, the district attorney "urged the jury to impose death on the basis of the suffering that this crime had caused the [victims'] family," and he "invoked the suffering that the crimes had caused Mr. Taylor's own family as a reason to impose death." Appellant's brief at 80. The appellant also complains that the district attorney argued that "the victims' family and the victims from their graves, asked that Mr. Taylor be executed." Appellant's brief at 80. Defense counsel made no objection to the comments the appellant now challenges on appeal. We disagree with the appellant's characterization of the prosecutor's comments and find no plain error. See Payne v. Tennessee, 501 U.S. 808, 826-28, 111 S.Ct. 2597, 2609, 115 L.Ed.2d 720 (1991), wherein the United States Supreme Court held that victim impact evidence was admissible for consideration during the penalty phase of the capital case. See also Ex parte McWilliams, 640 So.2d 1015 (Ala.1993); Coral v. State, 628 So.2d 988, 992 (Ala.Cr.App.1992), affirmed, 628 So.2d 1004 (Ala.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994). "[A] prosecutor may present and argue evidence relating to the victim and the impact of the victim's death on the victim's family in the penalty phase of a capital trial." McNair v. State, 653 So.2d 320 (Ala.Cr. App.1992), on return to remand, 653 So.2d 343 (Ala.Cr.App.1993), on second return to remand, 653 So.2d 347 (Ala.Cr.App.1993). In addition, the prosecutor's comments during closing argument were permissible as a reply in kind to defense counsel's attempt to elicit sympathy for the appellant and his family. "A prosecutor has a right based on fundamental fairness to reply in kind to the argument of defense counsel. See Ex parte Rutledge, 482 So.2d 1262, 1264 (Ala.1984)." DeBruce v. State, 651 So.2d 599, 609 (Ala.Cr. App.1993).
8. The appellant objects for the first time on appeal to the argument of the district attorney urging the jury to "do our duty" and find the appellant guilty, and for the jury to "do the right thing" and recommend death for the appellant. R. 1136, 1379. We find no plain error in these remarks. "In a very real sense, a jury does have a `duty' to convict the accused of the offense charged in the indictment if it finds the accused guilty of that offense beyond a reasonable doubt." Kuenzel v. State, 577 So.2d 474, 517 (Ala.Cr.App. 1990), affirmed, 577 So.2d 531 (Ala.1991), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991).
The district attorney's characterizations of the crime as a "massacre," the crime scene as a "slaughterhouse," and the appellant as a "graverobber" constituted proper inferences from the evidence. R. 798, 799, 1115. The law is clear that "`[i]n a proper case, the prosecuting attorney may characterize the accused or his conduct in language which, although it consists of invective or opprobrious terms, accords with the evidence of the case." Nicks v. State, 521 So.2d 1018, 1023 (Ala.Cr.App.1987), affirmed, 521 So.2d 1035 (Ala.), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988). Furthermore, there was no error in the prosecutor's comment cautioning the jury about the "smell" if they opened the evidence bag containing the victims' clothing. R. 1135-36.

XIII
At the suppression hearing, the trial court acted well within its discretion in exempting from the rule the Gadsden police officer who was primarily responsible for the appellant's interrogation following his arrest. "[I]nvestigators *66 or police officers commonly are exempted from the rule." J. Colquitt, Alabama Law of Evidence § 6.15 at 333 (1990). See also C. Gamble, McElroy's Alabama Evidence § 286.01 (4th ed. 1991). See also Rule 9.3, A.R.Crim.P.

XIV
The appellant complains of the admission of the following victim impact evidence during the guilt phase of his trial: testimony that the victim's son had gone into the same business as his father (R. 1036); testimony that the victims were murdered only two months before their 50th wedding anniversary (R. 1045); and the admission of a photograph of the victims in front of a Christmas tree. This issue is raised for the first time on appeal; no objection was presented at trial. We find no plain error. See Ex parte Crymes, 630 So.2d 125, 127 (Ala. 1993).

XV
The appellant asserts that his motion to quash the indictment should have been granted because "African-Americans, women and young adults are systematically and discriminatorily excluded from serving as grand jury forepersons in Etowah County." Appellant's brief at 88. However, the motion to quash alleged only a "systematic underrepresentation of young adults (age 18-30) in the selection of the grand jury forepersons." C.R. 58. Furthermore, the appellant's allegations are unsupported by facts or evidence. The appellant totally failed to establish or even allege a prima facie case of discrimination in the selection of grand jury forepersons. Compare Lee v. State, 631 So.2d 1059 (Ala.Cr.App.1993); Locke v. State, 631 So.2d 1062 (Ala.Cr.App.1993).

XVI
The appellant claims a violation of his right to a fair trial was violated because the trial court failed to conduct individual voir dire. Although the trial judge denied the appellant's motion for individual voir dire of the members of the jury venire, the judge stated:
"There will be allowed individual questioning of jurors like we have done in other capital cases in regard to the pre-trial publicity and I willI don't know it you want to call it halfway grant your motion or whatever, but we'll do like we normally do, bring them in in groups of twelve. We'll put them in the box andYou're been through it.
For the record, I'll state that we'll bring them in in groups of twelve, you know, to have the extensive voir dire questioning and then bring them in individually in regard to pre-trial publicity." R. 50.
The appellant did not pursue the "partial granting" of his motion.
"In Alabama, there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination. This rule applies to capital cases, and the granting of a request for individual voir dire is discretionary with the trial court." Coral v. State, 628 So.2d 954, 968 (Ala.Cr.App.1992). "The fact that the appellant's case involved capital murder is not alone reason to require individual voir dire.... A trial court's decision in denying individual voir dire examination of a jury panel will not be disturbed on appeal absent an abuse of that discretion." Smith v. State, 588 So.2d 561, 579 (Ala.Cr.App.1991). See also Henderson v. State, 583 So.2d 276, 283 (Ala.Cr.App.1990), affirmed, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). The extensive pretrial publicity and other circumstances that required individual voir dire in Brown v. State, 571 So.2d 345, 350-52 (Ala. Cr.App.1990), cert. quashed, 571 So.2d 353 (Ala.1990), vacated, 501 U.S. 1201, 111 S.Ct. 2791, 115 L.Ed.2d 966 (1991), are not present here.

XVII
The failure of the trial court to propound sua sponte "reverse-Witherspoon"[6] questions to the jury venire and the failure of the court to "life-qualify" the jury does not constitute plain error. Henderson v. State, *67 583 So.2d 276, 283-84 (Ala.Cr.App.1990), affirmed, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268, 117 L.Ed.2d 496 (1992). "The burden of either asking or having the trial judge ask a `reverse-Witherspoon `question lies with the appellant." Smith v. State, 581 So.2d 497, 506 (Ala.Cr. App.1990), reversed on other grounds, 581 So.2d 531 (Ala.1991). Here, as in Smith, 581 So.2d at 506, "[w]e have reviewed the appellant's claim, and we find no `plain error' by the trial judge's failure to ask sua sponte a `reverse-Witherspoon' question."

XVIII
Even had proper objection been interposed, the photographs of the victims' bodies as they appeared at both the crime scene and during the autopsies were properly admitted into evidence over the claim now made by the appellant that they were "irrelevant to any disputed issue and were introduced solely to inflame the jury." Appellant's brief at 92.
"Photographs are admissible into evidence within the discretion of the trial judge and will be reviewed on appeal only to determine if there has been an abuse of that discretion...
"Photographs are admissible if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered.... The fact that a photograph is gruesome is not grounds to exclude it as long as the photograph sheds light on issues being tried....
"[P]hotographs depicting the character and location of wounds on a deceased's body are admissible even though they are cumulative and are based on undisputed matters.... The fact that a photograph is gruesome is not grounds to exclude it as long as the photograph sheds light on issues being tried.... Also, a photo may be gruesome and ghastly, but this is not a reason to exclude it as long as the photograph is relevant to the proceedings, even if it tends to inflame the jury."
Ex parte Bankhead, 585 So.2d 112, 118 (Ala. 1991) (citations to authority omitted). See also Grice v. State, 527 So.2d 784, 786-87 (Ala.Cr.App.1988).

XIX
The appellant claims that the State failed to establish a proper chain of custody for the bodies of the two victims. This issue is raised for the first time on appeal; it was not presented to the trial court. "`The purpose for requiring that the chain of custody be shown is to establish to a reasonable probability that there has been no tampering with the evidence.'" Ex parte Williams, 505 So.2d 1254, 1255 (Ala.1987). Here, there is no evidence or indication that the bodies were altered or tampered with in any manner. We find no "plain error."

XX
Before the penalty phase of trial began, defense counsel stipulated to the existence of two aggravating circumstances: that the murders were committed during a robbery and that the murders were especially, heinous, atrocious, or cruel. The appellant now claims that this was "in effect, a partial `guilty plea'" and that the trial court "had a responsibility to conduct a colloquy on the record sufficient to demonstrate that such a `plea' was intelligently and voluntarily made." Appellant's brief at 96, 97. This issue is raised for the first time on appeal.
Defense counsel made this stipulation in an strategic effort "to prevent the District Attorney from asking any of these witnesses that we're fixing to call in mitigation, from asking them any questions about the crime itself or the events involving the crime or prevent him from in any way showing these photographs or making reference to these photographs, because that now has been proved by stipulation with the defendant." R. 1174. In response to questions by both defense counsel and the trial court, the appellant indicated that he understood the stipulation. R. 1173-74.
The appellant is represented on appeal by the same counsel who represented him at trial. "A party cannot assume inconsistent positions in the trial and appellate courts and, as a general rule, will not be permitted to allege an error in the trial court proceedings *68 which was invited by him or was a natural consequence of his own actions." Leverett v. State, 462 So.2d 972, 976-77 (Ala. Cr.App.1984). This rule applies in capital cases. Rogers v. State, 630 So.2d 78, 84 (Ala.Cr.App.1991), reversed on other grounds, 630 So.2d 88 (Ala.1992).

XXI
The appellant claims that he was sentenced to death on the basis of inadmissible hearsay. Specifically, the appellant claims that the following alleged hearsay was admitted: 1) Officer Garigues's testimony that Randy Statum had given him the same information that Statum had testified to earlier in the trial; 2) Officer Bradley's testimony as to where the paramedics said Mrs. Moore's body had been found; 3) Officer Bradley's testimony that he was told that Mrs. Moore's shoes came off as the medics were transporting her to the hospital; and 4) Officer Bradley's testimony that he had been told that the Shelby Motor Lodge was the same motel the appellant was "staying at." The appellant also claims that hearsay was used to prove the chain of custody of Mrs. Moore's purse.
There was no objection to any of the alleged hearsay testimony at trial.
"On review of a death penalty case, this Court will address any defect or plain error found in the proceeding under review, even if the error was not raised before the trial court. Rule 39(k), A.R.App.P. `"Plain error" only arises if the error is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings.' Ex parte Womack, 435 So.2d 766, 769 (Ala.Crim.App. 1983), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983), quoting United States v. Chaney, 662 F.2d 1148, 1152 (5th Cir.1981). The plain error standard applies only where a particularly egregious error occurs at trial. Ex parte Harrell, 470 So.2d 1309, 1313 (Ala.1985), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). When the error `has or probably has' substantially prejudiced the appellant, this Court will take appropriate action. Rule 39(k), A.R.App.P.; Ex parte Henderson, 583 So.2d 305, 306 (Ala. 1991); see Rule 45(A), A.R.App.P."
Ex parte Pierce, 612 So.2d 516, 518 (Ala. 1992), cert. denied, ___ U.S.___, 114 S.Ct. 201, 126 L.Ed.2d 158 (1993).
We find that these alleged errors do not rise to the level of "plain error."

XXII
The appellant complains that at the guilt phase of the trial, the trial court improperly "gave the jurors the unmistakable impression that they would be compelled to convict [the appellant] of capital murder under certain circumstances." Appellant's brief at 102. This issue is raised for the first time on appeal.
The trial court instructed the jury:
"If you are convinced beyond a reasonable doubt that the defendant committed the crime of murder of the intentional killing type during a robbery in the first degree as alleged in the first two counts of the indictment, then it would be your duty to find the defendant guilty of the said capital offense." R. 1143-44.
See also R. 1147, 1148, 1149.
This Court rejected a similar argument in Kuenzel, 577 So.2d at 517:
"In a very real sense, a jury does have the `duty' to convict the accused of the offense charged in the indictment if it finds the accused guilty of that offense beyond a reasonable doubt. `A jury is not empowered to waive the law or any of its rules its only power is to take the law of the case as given by the trial judge and apply it to the facts as developed on the trial. Out of this process comes the verdict.' Patterson v. State, 45 Ala.App. 229, 236, 228 So.2d 843, 849 (1969). `Admonition of the high and sacred duty resting upon juries by nisi prius judges should be encouraged rather than condemned.' Hope v. State, 21 Ala. App. 491, 492-93, 109 So. 521, 522 (1926). See also Dolan v. State, 81 Ala. 11, 16-17, 1 So. 707, 711 (1887). The trial judge did not violate the principle that `[c]ourts may instruct the jury as to the law of the case, but they may not instruct a jury as to what verdict they shall render in a criminal case *69 on a given statement of facts.' Woodham v. State, 28 Ala.App. 62, 64, 178 So. 464, 466 (1938)."

XXIII
The appellant claims that the trial court made "numerous errors" in its charge at the sentencing phase of the trial. Appellant's brief at 102. These issues are raised for the first time on appeal.
1. The appellant claims that the "trial judge never informed the jury that it always retained the option to impose life without parole, whatever its calculus as to aggravators and mitigators." Appellant's brief at 103. However, "[t]he jury may not recommend mercy without reason.... The jury does not have an `unfettered option' to recommend a sentence of life without parole unless after weighing the aggravating and mitigating circumstances it finds that life without parole is warranted." Williams v. State, 601 So.2d 1062, 1081 (Ala.Cr.App.1991) (citations to authority omitted).
2. The appellant contends that the instructions given at the sentence phase and Alabama's capital sentencing statute placed on the appellant an unconstitutional burden of proving at the sentence phase that the statutory aggravating circumstances proved by the state were outweighed by the mitigating circumstances. The appellant asserts that "[i]f the State proves that one or more statutory aggravating factors are present, the statute requires the jury to impose death unless the defendant shows that mitigating circumstances exist in the case, and that they outweigh the aggravating circumstances." Appellant's brief at 104.
This Court rejected similar claims in Pierce v. State, 576 So.2d 236, 254-55 (Ala. Cr.App.1990), affirmed after remand, 612 So.2d 516 (Ala.1992), cert. denied, ___ U.S. ___, 114 S.Ct. 201, 126 L.Ed.2d 158 (1993), and Kuenzel, 577 So.2d at 501.
3. The appellant claims error because the trial court "failed to inform the jury that it could consider mercy and sympathy in determining whether [the appellant] should live or die." Appellant's brief at 105. "The jury may not recommend mercy without reason." Williams v. State, 601 So.2d at 1081. The jury is "not, ... free to arbitrarily ignore any factor either positive or negative in arriving at the correct sentence." Morrison v. State, 500 So.2d 36, 43 (Ala.Cr.App.1985), affirmed, 500 So.2d 57 (Ala.1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987) (holding improper the requested instruction that "If you see fit, whether mitigating circumstances exist or not, you may recommend mercy for the defendant. This recommendation is solely in your discretion and not controlled by any rule of law. You may make such recommendation with or without a reason.").
4. The appellant contends that the trial court failed to adequately instruct the jury regarding its duty to consider mitigating evidence because, he says, the trial court instructed the jury only that it "should" and "may" consider mitigating evidence and never informed the jury that it "must consider mitigating circumstances which are proven by a preponderance of the evidence." Appellant's brief at 108. We addressed a similar situation in Carroll v. State, 599 So.2d 1253, 1271 (Ala.Cr.App.1992), affirmed, 627 So.2d 874 (Ala.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994):
"Although the trial court did use the terms `may' and `should' in connection with the jury's duty to consider and find the existence of any mitigating circumstances, a review of the court's entire charge reveals that the court made it clear that consideration of mitigating circumstances was an obligation on the jury that it `must' perform in arriving at its verdict, and not something that was optional."
"`The language of a charge must be given a reasonable construction, and not a strained and unreasonable one.'" Harris v. State, 394 So.2d 96, 100 (Ala.Cr.App.1981). "Hypercriticism should not be indulged in in construing charges of the court...." Addington v. State, 16 Ala.App. 10, 19, 74 So. 846, 855 (1916).
5. The appellant asserts that the trial court's supplemental charge that the state "has met the burden of proof of proving to you that there have been two aggravating *70 circumstances committed in this case," R. 1404, "was confusing and improperly slanted the jury toward death." Appellant's brief at 108. We find this argument without merit. In obtaining the appellant's conviction, the state proved the aggravating circumstance that the murder was committed during the course of a robbery. See Kuenzel, 577 So.2d at 486-87. Defense counsel stipulated to the existence of the especially heinous, atrocious, or cruel aggravating circumstance. Our review of the instructions of the trial court at the penalty phase convinces this Court that the jury was properly instructed on aggravating and mitigating circumstances, the burden of proof as to each, and the process to be used in weighing those circumstances. We find no indication that the charge signaled to the jury that the trial court favored a sentence of death.

XXIV
The appellant asserts that Ala.Code 1975, § 13A-5-49(4), was unconstitutionally applied in this case because "by charging the jury that it entered the penalty phase with findings in aggravation already conclusively determined, the trial court impermissibly shifted the burden of proof at penalty to the defendant." Appellant's brief at 110. The appellant further argues that this charge deprived the jury of its proper sentencing role and that the use of aggravating circumstance set out in § 13A-5-49(4) punishes the appellant twice for the same offense and fails to narrow the class of death-eligible defendants. Similar issues were addressed and decided adversely to the appellant in Kuenzel, 577 So.2d at 487-88.

XXV
The appellant contends that his conviction of one count of capital murder under Ala.Code 1975, § 13A-5-40(a)(10) (murder of two persons pursuant to a single course of conduct), and his conviction of two counts of capital murder under § 13A-5-40(a)(2) (murder during robbery), violate constitutional principles of double jeopardy. This issue is raised for the first time on appeal.
This case does not involve multiple trials for the same offense. Nor does it concern a situation where a defendant is charged with more than one offense arising out of the same transaction, convicted of those offenses, and given separate sentences for each offense, triggering an analysis under Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). The appellant in this case was given only one sentence. None of these double jeopardy protections encompasses the circumstances of which the appellant complains. See Ex parte Giles, 632 So.2d 577, 584 (Ala.1993), cert. denied, ___ U.S. ___ 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994). The guarantee "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Missouri v. Hunter, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983). See Jackson v. State, 516 So.2d 726, 761-63 (Ala.Cr.App.1985), affirmed on related part and remanded on unrelated part, 516 So.2d 768 (Ala.1986), appeal dismissed on return to remand, 516 So.2d 774 (Ala.Cr.App. 1987). The appellant's conviction of three counts did not violate Ala.Code 1975, § 13A-1-8(b). See Ex parte Haney, 603 So.2d 412, 419 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993).
We summarily reject the appellant's contention that "the jurors might naturally have felt Mr. Taylor was more deserving of death because he had been convicted of three capital offenses." Appellant's brief at 115. The jury was properly instructed on aggravating circumstances and jurors are presumed to follow the oral instructions of the trial court.

XXVI
The appellant asserts that the trial court erred in making its written findings required by Ala.Code 1975, § 13A-5-47(d). These issues are raised for the first time on appeal.
The appellant claims that by finding that "the mitigating circumstances heretofore enumerated are insufficient to outweigh the aggravating circumstances," (C.R. 196) the trial court reversed the standard of § 13A-5-47(e) that the aggravating circumstances outweigh the mitigating. This Court addressed a similar argument in Fortenberry v. State, 545 So.2d 129, 143-44 (Ala.Cr.App.1988), affirmed, 545 So.2d 145 (Ala.1989), cert. denied, *71 495 U.S. 911, 110 S.Ct. 1937, 109 L.Ed.2d 300 (1990).
The appellant complains because the trial court cited the wrong Code sections for the aggravating circumstances found to exist, i.e., the trial court incorrectly cited § 13A-5-49(1) and (2) instead of subsections (4) and (8). The mere fact that the trial court in a portion of its sentencing order committed a technical error in citing the incorrect subsections of the aggravating circumstances provision of the Code in no way prejudiced or harmed the appellant because the trial court had expressly identified by name the aggravating circumstances that it found.
The appellant asserts error because the trial court, as to Count three, found only one aggravating circumstance (that the murder was especially heinous, atrocious, or cruel when compared to other capital murders) although it instructed the jury that two aggravating circumstances (that the murder was committed during a robbery and that it was especially heinous, atrocious, or cruel) had been proven as a matter of law. The record indicated that the trial court properly considered and weighted the aggravating and mitigating circumstances. We find no prejudice to the appellant and no plain error.
Finally, the appellant contends that the trial court failed to adequately consider the psychological evaluation offered by the defense at the sentencing hearing. At the sentence hearing, the trial judge did state that he had not seen Dr. David Wilson's psychological evaluation report on the appellant. R. 1415. This report is not mentioned in the judge's written findings, which he read into the record apparently some short time before sentencing the appellant on May 5, 1993. R. 1419-1424. However, in his written order dated May 5, 1993, the trial judge specifically states: "The Court has also considered the psychological report dated February 25, 1993, by Dr. David R. Wilson, Licensed Psychologist, of Gadsden Psychological Services." C.R. 196, 205, 214. The psychological report concluded that the appellant suffered from an anti-social personality disorder.
We find no "plain error" in this regard. Even if the trial court had not seen the report at the time the appellant was actually sentenced, the trial court "reconsidered" its findings in his written report.

XXVII
In reviewing a death case, this Court is required to search the entire record for "plain error." We find that the trial court's written sentencing order is deficient in that the trial court failed to "enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49, each mitigating circumstance enumerated in § 13A-5-51, and any additional mitigating circumstances offered pursuant to section 13A-5-52." § 13A-5-47(d) (emphasis added). Therefore, this cause is remanded with instructions that the trial court rewrite its specific written findings so that they comply with the requirements of § 13A-5-47(d). Specifically, the trial court shall enter specific written findings concerning the existence or nonexistence of each aggravating circumstance enumerated in § 13A-5-49 and each mitigating circumstance enumerated in § 13A-5-51. It appears that the trial court did enter specific written findings concerning the nonstatutory mitigating circumstances offered. No evidentiary hearing is anticipated or required. The rewritten sentencing order of the trial court shall be filed in this Court within 35 days from the date of this opinion.
REMANDED WITH DIRECTIONS.
All Judges concur.
NOTES
[1] Defense counsel's objection was as follows: "Judge, just for the record, at this time, according to the chart that I've got, Mr. Hedgspeth struck three jurors who, I believe, are of the black race." R. 764.
[2] "[I]n reviewing allegations that the prosecutor exercised the state's peremptory strikes in a racially discriminatory manner, `the reviewing court's inquiry ... shall not be restricted by the mutable and often overlapping boundaries inherent within a Batson-analysis framework, but, rather, shall focus solely upon the "propriety of the ultimate finding of discrimination vel non. Bui v. State, 627 So.2d 855, 859 (Ala. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2970, 125 L.Ed.2d 669 (1993) (quoting Huntley v. State, 627 So.2d 1013, 1015 (Ala.1992)).
[3] "In determining the sentence to be imposed in a capital case, the trial court is to consider the advisory verdict of the jury. § 13A-5-57(e), Code of Alabama 1975. However, the jury's recommendation to the trial court that the appellant should be sentenced to life imprisonment without parole is not binding upon the trial court. Hooks v. State, 534 So.2d 329 (Ala.Crim. App.1987), aff'd, 534 So.2d 371 (Ala.1988), cert. denied, 488 U.S. 1050, 109 S.Ct. 883, 102 L.Ed.2d 1005 (1989); Bush, 431 So.2d at 559. We find no Alabama law that specifies the weight a trial court is to accord to the jury's advisory sentence." Sockwell, ___ So.2d at___(footnote omitted).
[4] In Robison v. Maynard, 829 F.2d at 1504-05 [footnote omitted], the court stated:

"In short, the Petitioner's federal constitutional guarantees give him the right to present `any aspect of [his] character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death.' Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978). Yet, the corollary to that rule is the exhortation that the sentencer may not refuse to consider or be precluded from considering `any relevant mitigating evidence.' Eddings v. Oklahoma, 455 U.S. 104, 114, 102 S.Ct. 869, 877, 71 L.Ed.2d 1 (emphasis added [in Robison]).
". . . .
"In short, we cannot agree with Petitioner's contention that any testimony a defendant believes would make the jury less likely to return a death verdict must be allowed to satisfy the dictates of federal due process. The broad range of facts admissible under the Eddings delineation of mitigating evidence must focus on the persona of the defendant or on the fabric of the crime of which he has been convicted. We can find no justification for broadening that focus."
[5] "Rule 1.5, [A.R.Crim.P.], as it originally read effective January 1, 1991, made these rules applicable to proceedings `commenced' on or after January 1, 1991. The amendment of April 21, 1992, makes these criminal rules applicable to all criminal proceedings without regard to when they were `commenced.'" Committee Comment to Rule 1.5, A.R.Crim.P.
[6] Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)